[Civil No. 4768. Filed May 14, 1945.]

[158 Pac. (2d) 887.]

KENNECOTT COPPER CORPORATION, a Corporation, Successor to Nevada Consolidated Copper Corporation, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, RAY GILBERT, EARL G. ROOKS, and FRED E. EDWARDS, as Members of The Industrial Commission of Arizona, and CASTULO G. GARCIA, Respondents.

Messrs. Fennemore, Craig, Allen & Bledsoe, for Petitioner.

Mr. H. S. McCluskey, and Mr. David P. Jones, for Respondents.

MORGAN, J.—The respondent Castulo G. Garcia, while in the employ of petitioner, was seriously injured in an accident arising out of and in the course of his employment on November 19, 1942. He was aged 33 years, was of limited education, and had spent practically all his mature years working in and about mines. He had a wife and four children dependent upon him, and was earning at the time of the accident $186.30 per month. The principal injuries were fractures of the right clavicle, mid-portion of first and second ribs, fracture of the pelvis, and very severe shock. He suffered aggravation of a previously existing unknown heart condition. Applicant was hospitalized and treated until April 4, 1944.

There is no conflict in the evidence. The doctors were of the opinion that the applicant had a 25%

general functional disability attributable to the aggravating effects of the accident, and that he would be unable to follow his usual occupation. They gave it as their opinion that he was able to engage in light occupations not requiring more than slight exertion. The applicant's evidence disclosed that he had sought but was unable to find any employment in which he could engage. The medical evidence and the proof on the whole indicate that applicant's condition was stationary and that his physical disability was permanent. An examination of the applicant on June 9, 1944, by three doctors, made at the suggestion of the commission, indicated that applicant complained that his right upper extremity still bothered him. It also appears that during the year preceding this examination his heart condition had been alleviated to some extent.

The applicant was awarded total disability with benefits, under the provisions of Section 56–956, Arizona Code Annotated 1939, Subsection (a), up to April 4, 1944. On the 24th of August the respondent commission made an award effective as of April 4, 1944, giving the applicant a status of temporary partial disability, under Section 56–957, Subsection (a), allowing him compensation of 65% of the difference between $186.30 and the wages the applicant is able to earn after April 4, 1944, until the further order of the commission, not to exceed sixty months. There was no finding as to the amount of wages that applicant might be able to earn after April 4th, and no evidence in the record upon which to base such a finding. The commission found that the physical condition of the applicant was and had been stationary since April 4th, that he had completely recovered from personal injuries sustained from the various fractures, that the accident had aggravated a pre-existing heart condition to such an extent as to cause a 25% functional disability, and concluded that he was suffering a temporary partial disability.

The petitioner filed seasonable application for rehearing. In this application it offered to prove by the testimony of a number of doctors who had examined the applicant, and by x-rays, that the disability was permanent. Without hearing any evidence as to this, the commission denied the petition on September 8, 1944, and the petitioner thereupon brought the matter before this court through the usual *certiorari* proceedings.

Two questions are raised by the petitioner: (1) Where the evidence is uncontradicted that the physical condition of the applicant is· stationary and the award so finds, may the commission award compensation upon the basis of continuing temporary partial disability. (2) If so, may the commission award compensation for such partial disability without finding as a basis for its award the amount of wages which the applicant is able to earn after the injury.

The commission asked for a determination of the following issues: (1) What is the procedure provided by law in a non-schedule injury of this nature? (2) When, under the law, is a case stationary? (3) Must the commission, before classifying a disability case as one of partial disability, immediately establish percentage of loss of earning power, or does it have jurisdiction to determine when the evidence is sufficient for that purpose? (4) When a man suffering from a non-schedule injury is discharged as a total disability subject, and the evidence tends to show that he has a permanent partial physical disability, must the commission immediately rate him under the permanent partial disability provision of the statute, or may he be rated as a temporary partial disability case during rehabilitation and until employability is established by competent evidence?

 This is a rather large order. The first thing for us to determine is how far we may go in answering the various questions propounded. The right of re-

view of this court on appeal in cases of this character is fixed by Section 56–972, Arizona Code Annotated 1939: The appeal "shall be heard on the record of the commission as certified by it. The review shall be limited to determining whether or not the commission acted without or in excess of its power; and, if findings of fact were made, whether or not such findings of fact support the award under review. If necessary the court may review the evidence." It will be observed that in this appeal we have no general supervisory powers over the commission, and we are limited to three phases: (1) Has the commission acted without or in excess of its power? (2) As a legal proposition, do the findings of fact support the award? (3) Are the findings justified by the evidence? This statement has no relation to the jurisdiction of the superior and supreme courts in a proceeding which may be instituted under Section 56–916, Arizona Code Annotated 1939.

In the case of *Red Rover Copper Co.* v. *Industrial Commission*, 58 Ariz. 203, 118 Pac. (2d) 1102, 1106, 137 A. L. R. 740, we considered in a general way the powers and procedure of the commission, and the power of this court in an appeal from an award allowed an injured employee. In the opinion it is pointed out that while the commission is not a court in the strict sense of the term, it is a tribunal having authority to determine questions of fact and apply the existing law thereto in the cases in which it may make awards. Its decisions on awards are reviewable by this court only under the provisions of Section 56–972, *supra*. The following observations are pertinent:

" . . . We have always reviewed such awards upon the same basis as judgments of the superior courts, subject to the special rules as to procedure set forth in the Act. . . . The commission is the only body authorized by law to make an award of compensation under the Act. . . . And even this court, in its revisory

power, may only affirm or set aside the award, having no power to modify it. . . . ''

Following this, we pointed out that the commission in making these awards is required to consider and determine, first, what are the facts, and second, what is the law upon that state of facts. In making these determinations, the commission applies both common law and equitable principles. Following this it was said:

''We hold, therefore, that the commission in making an award necessarily has the right to consider and make the proper application of the rules of equity, as well as those of the common law, to the facts as found by it. If it errs in its application of these rules its action is subject to review by this court, and while we give great weight to the determination of the commission as to the facts, we have never hesitated to consider the question of whether the law was properly applied to those facts independently, and uninfluenced by the conclusions of the commission.''

Inasmuch as the questions mentioned above relate either to the jurisdiction of the commission or the application of the rules of common law and equity, we conclude under the authority of the Red Rover decision that we have jurisdiction to pass upon all issues presented.

A determination of the questions involved require consideration of various provisions of the workmen's compensation act. Section 56–907, Arizona Code Annotated 1939, provides:

''The commission shall have full power, jurisdiction and authority to administer and enforce all laws for the protection of life, health, safety and welfare of employees in every case and under every law, where such duty is not now specifically delegated to any other board or officer, . . . .''

From other portions of the act we find that the allowance of compensation to workmen coming within

the terms of the law is vested exclusively in the commission. As stated in the Red Rover case, the commission is the only body authorized by law to make an award of compensation. The act does not in terms give the commission continuing power over its awards except in cases coming within the provisions of Section 56–967, Arizona Code Annotated 1939. Thus, where an award has been made in favor of an employee, the commission is specifically given power, upon a proper application to increase or rearrange the compensation. While this court has never had occasion to pass directly upon the jurisdiction of the commission with respect to continuing powers over awards not within the purview of Section 56–967, *supra,* we think that in various cases it does have that power. For instance, when an award is made for a certain period, or even for life, and the disability entirely ceases before the expiration date for payment, the commission would surely have power to terminate the award or payments. The question is not directly before us, but we mention it in passing. This statement is fortified by the language in *Zagar* v. *Industrial Commission of Arizona,* 40 Ariz. 479, 14 Pac. (2d) 472, 475, wherein the late Justice Ross pointed out that under the provisions of Section 1453, R. C. 1928, now Section 56–973, Arizona Code Annotated 1939, such power is impliedly conferred. We quote:

" . . . Without a continuing power to alter, amend, or rescind its awards, according to the principles heretofore stated, the commission would certainly be greatly hampered in its efforts to carry out the spirit of the law and to do justice between the parties. . . . "

Neither in the Zagar case nor here do we take the position that the commission may of its own *ipse dixit* change, modify or set aside an award. Such action may be taken only when impliedly authorized by the law,

or in the application of the common law and equitable principles mentioned in the Red Rover decision.

In this case, the applicant, under the provisions of Section 56–956(a) was classified for temporary total disability and was allowed 65% of his average monthly wage from the date of the accident to April 4, 1944, together with benefits for dependents. If, after this partial disability period had expired, it became evident that the applicant was totally and permanently disabled, he would then have to be so classified under Section 56–956(b), providing as follows:

"For total disability adjudged to be permanent, compensation of sixty-five (65) per cent of the average monthly wage shall be paid during the life of the injured person."

As we have said, however, the commission, from the evidence which has already been referred to, classified the applicant as a temporary partial disability case, and rated him under the provisions of Section 56–957(a), which reads:

"For temporary partial disability there shall be paid during the period thereof, not to exceed sixty (60) months, sixty-five (65) per cent of the difference between the wages earned before the injury and the wages which the injured person is able to earn thereafter."

It is the position of the petitioner that since the evidence disclosed that the applicant's physical disability was permanent, he should have been rated under Subsection (c) of 56–957, reading in part as follows:

"In cases not enumerated in subsection (b), where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter,

but the payment shall not continue after the disability ends, . . . ."

In order that the reference in this paragraph to Subsection (b) be not confusing, it may be well to state that under (b) there are listed certain disabilities which shall be deemed permanent partial disabilities requiring the payment of 55% of the average monthly wage of the injured employee. Thus for the loss of a thumb, fifteen months are allowed; for the loss of a hand, fifty months, *et cetera.* The payments under (b) are compensation for the actual loss of a member, and have no relation to the ability of the employee to earn wages.

Section 56–957 also contains Subsection (d) which must be considered in connection with the issues presented to us. We quote:

"In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. . . . "

Under this subsection previous disability, as the loss of an eye, or otherwise, and the resulting prior disability as it existed at the time of the subsequent injury, is to be deducted from the percentage allowed for the non-schedule disabilities which are provided under Subsections (a) and (c).

The first question to be answered is that raised by the petitioner. Since it appears that the physical condition of the applicant is permanent and stationary, was not the commission, as a matter of law, required to rate him under Subsection (c) rather than under Subsection (a)? The answer to this requires an interpretation of the two subsections. It will be noted that (a) reads "for temporary partial disability" while (c) states "where the injury causes partial disability for work." In (c) the disability is *for work*

only, while in (a) the disability has not in terms been confined to work. Subsection (a) fixes a larger percentage than (c), the first being 65%, the second 55%. Both in (a) and (c) the respective percentages are to be applied to the difference between the wages earned before the injury and the wages which the injured person is able to earn thereafter. In each case the basis for the compensation is the loss of wages.

So far as we are able to discover a provision similar to Subsection (a) does not appear in any other compensation law. With the exception of Georgia and Oklahoma, the workman's compensation acts provide for "temporary total disability," for "total disability," and for "partial disability," without breaking down the partial disability into temporary or permanent. Such a breakdown seems to exist in the Georgia and Oklahoma acts, but we have been unable to find any opinions which shed much light on the questions now before us. The rule is that we must give effect so far as possible to all portions of the statute. We must ascertain from the law itself, if it can be done, the meaning therein expressed. The question here is, What does "temporary partial disability" mean? Where only strictly temporary partial disability is involved, that is, where the effects of the injury will disappear within a reasonable time, there is no question. However, in a case where the disability is conceded to be permanent, may it be considered under the law, as temporary for any period. We think that Subsection (a) may be interpreted as applying to that phase of permanent partial disability where the employee, although able to work at some gainful occupation, is still suffering from the effects of the injury, and which it may be reasonably anticipated will disappear within the time fixed for the payment of the compensation. We are impelled to this view particularly by the fact that the disability mentioned in Subsection (a) is not confined to work as in Subsection (c).

Therefore, we think the reasonable construction of the subsection is that the percentage of compensation provided therein is not only for loss of earnings, but also for the continuing functional disability or injury. The legislature had the same right to provide for payments on this account as it had for the loss of members, in Subsection (b). We are not unmindful of the rule established in non-schedule cases that the percentage of compensation for injury is based upon the work disability rather than the physical or functional disability. What we have said in no way conflicts with that rule. It follows that an injured employee should in all cases be rated under Subsection (c) when the actual effects of his injury have ceased and only residual permanent disability remains which causes partial disability for work.

██ Whether an employee is to be rated under Subsection (a) or (c) is a fact to be determined by the commission. This is a matter wholly within its jurisdiction, and it is vested with ample discretion. It has the opportunity to observe the applicant personally. It has recourse to the opinions and findings of the medical examiners. It is possessed of the knowledge common to all mankind, that a man may be able to perform work after the period of his hospitalization and treatment expires, but may still suffer for a period from the effects of an injury which has become static or stationary. Its findings in most cases would be conclusive.

██ As we have seen, the test is not the permanency of the partial disability. The test is, was the applicant's physical condition stationary, and had he completely recovered from the personal injury, and was his disability for work caused only by the residual permanent disability? Applying these tests to the case at bar, we find that the commission's award cannot be sustained under its own findings. It found:

"That the physical condition of said applicant is now stationary, and has been stationary since April 4, 1944.

"That said applicant on April 4, 1944 was completely recovered from said personal injury sustained in said accident, and there was no disability resulting from the fractured clavicle, fractured ribs and fractured pelvis sustained by said applicant in said accident."

As a matter of fact, the evidence before the commission, if it proved anything, tended to show that the applicant should have been rated totally and permanently disabled. He was unable to work at his usual occupation, and had been unable to secure any other employment because of his condition. We cannot revise the commission's award, and we take it that on rehearing due consideration will be given to the facts.

It is our opinion that whether a case is rated under Subsection (a) or Subsection (c) of 56–957, *supra* the percentage of disability mentioned in Subsection (d) must be applied. This court has on several occasions spoken upon this subject. The average monthly wages before the accident must be found, and there must also be a finding as to the wages the applicant is able to earn thereafter. *Kilpatrick* v. *Hotel Adams Co.*, 42 Ariz. 128, 22 Pac. (2d) 836; *Six Companies, Inc.* v. *Industrial Commission of Arizona*, 42 Ariz. 501, 27 Pac. (2d) 678; *Hoffman* v. *Brophy*, 61 Ariz. 307, 149 Pac. (2d) 160.

There may be some difficulty in determining what monthly wages the applicant will be able to earn. This is a duty, however, which the law imposes upon the commission. It is under no compulsion to make an award until it is able to determine in some way what the wages of the employee will be. It has the right to continue the hearing for that purpose. If an employee, by reason of his injuries, is unable to procure any employment at his usual work, or at some other gain-

ful occupation, he may be continued in the temporary total disability class until some definite evidence is procured to determine what his wages will be. *Austin Bros. Bridge Co.* v. *Whitmire,* 31 Ga. App. 560, 121 S. E. 345; *Texas Employers' Ins. Ass'n* v. *Brock* (Tex. Com. App.), 36 S. W. (2d) 704. These wages cannot be fixed by guess or conjecture. If an employee fails to co-operate by endeavoring to find employment, or if his failure to be engaged in a gainful occupation is not due to his partial disability, then the commission can determine what his wages should be by taking into consideration his age, condition, and the pay being earned by others in like circumstances.

We believe what has been said disposes of all the questions raised. The award is set aside.

STANFORD, C. J., and LaPRADE, J., concur.