494 P.2d 1353

**HARDWARE MUTUAL CASUALTY COM-PANY and Motel 6, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent, Audrey Roberts, Respondent Employee.**

**No. 1 CA–IC 639.**

Court of Appeals of Arizona,
Division 1,
Department B.

March 23, 1972.

Rehearing Denied May 2, 1972.

Review Denied June 20, 1972.

. 8

------♦------

Strong & Pugh, by William K. Strong, Phoenix, for petitioners.

Chris T. Johnson, Phoenix, for respondent employee.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

JACOBSON, Judge.

The substantive issue raised in this appeal by writ of certiorari from an award of the Industrial Commission deals with whether a failure of a hearing officer to determine the actual loss of earning capacity during the period of employee's partial temporary disability requires the setting aside of the hearing officer's award and the Commission's affirmance thereof.

The employee-respondent, Audrey Roberts, on April 7, 1969 sustained a broken right arm in the course and scope of her employment while working as a maid for Motel 6 in Yuma, Arizona. On October 17, 1969, Mrs. Roberts was examined by Dr. Alvin L. Swenson who reported that:

"At this examination it would be my opinion that Mrs. Roberts would be able to carry out gainful employment. She may have some feeling of soreness and stiffness about the right elbow with strenuous work and may have to avoid lifting of heavy mattresses and heavy cleaning equipment for approximately a week or two as she is working. After that I would feel that she should be able to carry out her usual activities as a maid. She could then be seen and examined in approximately sixty to ninety days and it would be my opinion that the condition should be stationary at that time and final rating could be carried out."

At this same examination, Mrs. Roberts was told that she could return to light work.

Subsequent medical examinations revealed that Mrs. Roberts' condition became medically stationary as of January 1, 1970 and that she had sustained a five percent functional loss of use of her right major arm.

Pursuant to this information, the petitioner-insurance carrier, Hardware Mutual Casualty Company, paid Mrs. Roberts total temporary disability and partial temporary disability compensation through October 30, 1969, and permanent partial (scheduled) disability compensation based upon the five percent loss of use of her right arm.

Mrs. Roberts protested this payment, a hearing was held, following which the hearing officer entered his award finding insofar as pertinent that:

"5. Applicant was examined by her attending physician, Dr. Swenson, on October 17, 1969; Dr. Swenson reported

that the applicant was capable of employment only on a restricted basis, and that her condition was not stationary.

"6. That when released to restricted duty, applicant was not physically able to perform all required duties of her job as a maid, such as lifting mattresses or moving furniture.

"7. By letter dated September 11, 1970, Dr. Swenson reported that applicant's condition became medically stationary on January 1, 1970; his last examination performed on February 27, 1970 was to evaluate her permanent disability."

Based upon these findings the hearing officer awarded Mrs. Roberts temporary partial disability for the period of October 17, 1969 through January 1, 1970. The Commission affirmed this award and petitioners have sought review only as to the award for temporary partial disability.

Petitioners advocate that the award must be set aside for two reasons: (1) that Mrs. Roberts failed to make a good faith effort to find employment during the period of temporary partial disability, and (2) that the hearing officer's award failed to make a finding as to the loss of earning capacity during this same period.

■ The first contention is basically an attack on the sufficiency of evidence, that is, petitioners contend that during the period of partial disability the burden is upon the employee to show that she was entitled to compensation and the evidence is insufficient to support that burden.

In this regard the testimony revealed that following Mrs. Roberts' examination by Dr. Swenson in October, 1969, she had on one occasion in November, 1969, sought employment in the Yuma area by contacting four prospective employers. She made no further active effort to seek employment. Petitioners contend that in view of Dr. Swenson's report that Mrs. Roberts should be fully recovered by the end of October, 1969, together with a one-shot effort at seeking employment, must be considered as a bad faith effort on her part to

seek employment and that she had voluntarily removed herself from the labor market.

Therefore, petitioners contend, Mrs. Roberts is entitled to no temporary partial disability compensation. This attack overlooks two material facts in this case: the first being that Dr. Swenson did not declare Mrs. Roberts' condition to be medically stationary until January 1, 1970; and the second during Mrs. Roberts' own uncontradicted testimony that she was, during this period, physically unable to perform even her daily household chores and therefore could not actively seek employment.

It has long been the rule in Arizona that physical disability or lack thereof is not the sole factor in determining loss of earning capacity, but that the Commission must look to other factors including the ability of the employee to perform the work if he were permitted to attempt it. Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 (1935); Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959). In evaluating the evidence before it, the Commission may well have believed Mrs. Roberts' testimony that she was physically unemployable between the months of October, 1969, and January, 1970, especially in view of the medical testimony that her condition did not become medically stationary until January 1, 1970. Our review of the record leads us to find that such a belief by the Commission was supported by the evidence.

■ Petitioners' second contention is somewhat more difficult to answer. Our workmen's compensation laws contemplate that an injured employee might pass physically through three stages following his injury: (1) a period of temporary total physical incapacity during which time his injuries would prohibit him from working at all; (2) a period of temporary partial incapacity during which time his ability to work, through treatment and convalescence, has increased to a point where he may engage in some activity but he has not progressed to the stage that he no longer needs medical treatment; and (3) his con-

dition has become medically stationary, that is, his condition cannot be medically improved to increase his activities and hence increase his earning capacity. Based upon this three stage physical development, an injured workman may be compensated correspondingly for (1) temporary total disability (A.R.S. § 23–1045, subsec. A); (2) temporary partial disability (A.R.S. § 23–1044, subsec. A); and (3) permanent total or partial disability (A.R.S. §§ 23–1044, subsecs. B, C; 23–1045, subsec. B).

The statutory language giving rise to compensation under the second category is:

"For temporary partial disability there shall be paid during the period thereof, for not to exceed sixty months, sixty-five per cent of the difference between the wages earned before the injury *and the wages which the injured person is able to earn thereafter.*" (Emphasis added.) A.R.S. § 23–1044, subsec. A.

Petitioners' contention is that before temporary partial disability can be paid, the Commission must make a factual determination as to the amount of wages the injured workman is able to earn following the "light work" order of a doctor. Mrs. Roberts, on the other hand, contends, as a matter of policy, that during the period of temporary partial disability and in the absence of a bad faith effort to seek work, the injured employee must be considered as being unable to earn wages and therefore automatically entitled to full compensation during this temporary period. To hold otherwise, this argument continues, would allow insurance carriers, in every case, to cease compensation payments upon the receipt of a "light work" order by the use of a Notice of Claim status and require the injured workman to petition for a hearing, thus placing the added burden and expense upon him to prove his inability to work, and prolonging the compensation payment process.

Assuming respondent is correct, such a procedure is contemplated by the revisions made in our workmen's compensation laws

that became effective January 1, 1969. We believe that it is generally conceded that the legislature by its amendments intended to simplify the procedure and thereby shorten the period of time by which an injured claimant can claim and receive compensation for his injuries. To this end the new act requires the insurance carrier, be it the Fund or a private carrier, to commence compensation payment within 14 days of the injury. (A.R.S. § 23–1062) and to allow compensation to be paid, increased, or decreased without the necessity of a formal award. *See*, A.R.S. § 23–1061. In order to accomplish this simplified approach the power was vested in the carrier to make the initial determination as to whether the claim was compensable at all and following the period of temporary total disability whether such compensation should continue. (A.R.S. § 23–1061).

The legislature having given such a power to the carrier, the carrier can, of course, exercise that power by refusing initially to pay compensation following the period of temporary total disability, as was done in this case.

Having determined that an injured workman has no automatic right to full compensation during the period of his temporary partial disability, we turn to the issue of whether, when earning capacity during this period has been placed in controversy, the Commission must make a specific finding thereon. We are of the opinion that the Supreme Court decision in the case of Kennecott Copper Corp. v. Industrial Comm., 62 Ariz. 516, 158 P.2d 887 (1945) has answered this question in the affirmative:

"It is our opinion that whether a case is rated under subsection (a) or subsection (c) of . . . [A.R.S. § 23–1044] the percentage of disability mentioned in subsection (d) must be applied. . . . The average monthly wages before the accident *must* be found, and there *must* also be a finding as to the wages the applicant is able to earn thereafter.

\*    \*    \*    \*    \*    \*

"This is a duty . . . which the law imposes upon the commission." 62 Ariz. at 528, 158 P.2d at 892. (Emphasis added.)

The answer in this case, in our view of the evidence, is that Mrs. Roberts earned no money during the period of her temporary partial disability and she was unable to do so. However, the Commission having made no specific finding in this regard and this court having no power to modify the Commission's award, the award must be set aside for the purpose of allowing the Commission to make the necessary finding.

Award set aside.

HAIRE, P. J., and EUBANK, J., concur.