530 P.2d 385

**Samuel W. MILLS, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Clyde Nelson Construction Co., Respondent Employer,**

**Fidelity & Guaranty Insurance Underwriters, Respondent Carrier.**

**No. 1 CA–IC 993.**

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 9, 1975.
Rehearing Denied Feb. 24, 1975.
Review Denied April 1, 1975.

of an injury to his left thumb while using a power saw in the course of his employment with Clyde Nelson Construction Company. The carrier accepted petitioner's industrial claim by notice of claim status dated July 29, 1971. On August 13, 1971 the Industrial Commission entered its notice of average monthly wage determined at $587.-33. This determination was never challenged. Approximately 15 months after his initial injury, after a temporary return to work, and after surgery on his thumb, petitioner returned to work on August 13, 1972, his temporary compensation being terminated on that date. Shortly thereafter on September 7, 1972 petitioner's medical condition became stationary, his medical benefits were terminated, and he was discharged with a permanent disability on that date. Contemporaneous with the notice of claim status reflecting the above, the carrier issued its permanent scheduled award on Sept. 19, 1972 determining that petitioner was entitled to a scheduled award due to the 50% functional loss of use of his left thumb. Petitioner timely requested a hearing in regard to this scheduled award, claiming that he was entitled to an unscheduled award.

At the formal hearing of this protest all the evidence was directed to the issue of whether petitioner had sustained a prior permanent injury resulting in a loss of earning capacity. No evidence was presented and no objection was made to the earlier average monthly wage determination by the Commission. In addition, no objections were raised concerning petitioner's status or entitlement to temporary compensation benefits between his return to work on August 13, 1972 and the termination of his medical benefits three weeks later on Sept. 17, 1972.

Petitioner first seeks review of his average monthly wage determination based on the failure of the Commission to comply with A.R.S. § 23-1061(F). The pertinent portion of that section reads:

"The commission shall thereupon make its own independent determination of the

Alston, Bailey & Edwards by Cecil A. Edwards, Jr., Phoenix, for petitioner.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Moore & Romley by Craig R. Kepner, Phoenix, for respondent employer and carrier.

## OPINION

DONOFRIO, Presiding Judge.

This case is before the Court by writ of certiorari to review the lawfulness of the decision upon review issued by the Industrial Commission on May 4, 1973 affirming the decision of the hearing officer.

On July 13, 1971 petitioner Mills filed a claim for benefits alleging the sustaining

average monthly wage pursuant to § 23–1041. The commission shall within thirty days after receipt of such notice notify the employee, employer and carrier of such determination. The amount determined by the commission shall be payable retroactive to the first date of entitlement. The first payment of compensation shall be accompanied by a notice on a form prescribed by the commission stating the manner in which the amount of compensation was determined."

■ It is claimed by petitioner that no item in the file indicates that the Commissioners considered the matter of petitioner's average monthly wage and that because the file is silent as to any action by the Commission, there is a presumption that the Commission did not act, citing Verdugo v. Industrial Commission, 15 Ariz.App.· 155, 487 P.2d 1 (1971). This decision, however, was vacated by our Supreme Court in Verdugo v. Industrial Commission, 108 Ariz. 44, 492 P.2d 705 (1972). Nonetheless, the Supreme Court decision in Verdugo does indicate that when the file is silent as to the action of the Commission in making the alleged award, the presumption is that the Commission did not make the award. 108 Ariz. at 49, 492 P.2d 705. In holding this way, the Supreme Court was laying to rest the split in interpretation of Department A and Department B of the Court of Appeals as to this issue of presumption. In following the decisions of this Department in Cauley v. Industrial Commission, 13 Ariz. App. 276, 475 P.2d 761 (1970) and Land v. Industrial Commission, 15 Ariz.App. 117, 486 P.2d 229 (1971), the Supreme Court said:

"* * * In the case at bar, the evidence as to whether the Commission did consider and act is readily available to the Commission, while proof that they did not is practically impossible for the petitioner to show. We feel the presumption should be that the Commission did not act absent something in the file showing that the Commission did, in

fact, consider the matter and act accordingly: * * *" 108 Ariz. at 48, 492 P. 2d at 709.

Respondent's reply to this argument is one of res judicata as at no time did petitioner request a hearing to protest the average monthly wage determination. They therefore claim, citing abundant authority, that a workman cannot seek review of a claim for the first time in the reviewing court where such claim was not raised or presented initially to the Industrial Commission. Thus, failure to challenge the correctness of the average monthly wage determination within the 60-day clause of A.R.S. § 23–947 becomes res judicata. See Talley v. Industrial Commission, 105 Ariz. 162, 461 P.2d 83 (1969); Russell v. Industrial Commission, 104 Ariz. 548, 456 P. 2d 918 (1969); Garcia v. Industrial Commission, 20 Ariz.App. 145, 510 P.2d 1050 (1973). Respondent in attempting to bolster this argument under the circumstances cites Pinkerton v. Industrial Commission, 15 Ariz.App. 275, 488 P.2d 480 (1971) for the proposition that even where the Industrial Commission fails to perform its positive duty to check the insurance carrier's calculation pursuant to A.R.S. § 23–1061(F), the Court will not grant relief. In Pinkerton, however, petitioner was not claiming that the attempt to make the determination was unauthorized or that no independent determination was made, but rather that the initial determination was erroneous. Thus, Pinkerton is a different set of circumstances. We believe that under the Garza decisions, i. e., Garza v. Industrial Commission, 17 Ariz.App. 525, 498 P.2d 599 (1972) and the opinion upon rehearing, 18 Ariz.App. 223, 501 P.2d 399 (1972), and most recently under Mendoza v. Industrial Commission, 528 P.2d 184, 1 CA–IC 995 (1974), res judicata is not a defense when the Commission's determination as to average monthly wage is a nullity for failure to comply with A.R.S. § 23–1061(F). As said by Chief Judge Jacobson in the Mendoza decision,

"* * * However, such a defense presupposes that the average monthly wage

determination was proper for if it was void from its inception, the doctrine of res judicata would never come into play. * * * "

■ Our inquiry, therefore, must focus on the validity of the Commission's average monthly wage determination as to whether the Commission rubberstamped the carrier's calculations or made an independent determination as required by law. In our estimation there is sufficient evidence in the file to indicate that in reviewing the carrier's determination of average monthly wage, the Commission made its own independent analysis pursuant to A.R.S. § 23–1041. A memorandum dated August 12, 1971 signed by M. Scofield, who also signed the Industrial Commission's notice of average monthly wage approving the carrier's determination, indicates the following:

"Called Teresa Cardelli, U.S.F. & G. [United States Fidelity and Guaranty Company, the carrier]. All past employment used for average monthly wage calculation was in Arizona."

This writing indicates that the Commission was involved, at least minimally, in analyzing the basis of how the carrier arrived at its figures. Without rebuttal this is sufficient evidence to conclude that the Commission was involved in an independent determination. The fact that the Industrial Commission might have erred in approving the carrier's calculations as to average monthly wage is beyond challenge at this point. Once it is evident that the Commission complied with the statutory requirements of making an independent determination, failure to challenge within 60 days is fatal as res judicata precludes review at this stage.

■ Petitioner's argument as to the file not containing anything purporting to be the action of the Industrial Commissioners, as the action taken by the Commission was signed by M. Scofield, is erroneous. See Mendoza where it determined that the May 5 resolution of the Industrial Commission empowering M. Scofield, among others, to make average monthly wage determinations involved internal functioning of the Commission and as such the resolution was a valid delegation of the Commission's authority not requiring compliance with A.R.S. § 41–1004(A). Therefore, the resolution not being a "rule", it was not required that it be filed with the Secretary of State as mandated by A.R.S. § 41–1004(A) in order that it be a proper delegation of power.

Petitioner's second argument is an alleged failure by the Industrial Commission to make a factual finding on what temporary benefits petitioner was entitled to receive for the three-week period after he returned to work and when he was medically discharged. As mentioned previously, in the notice of claim status dated September 19, 1972, the carrier terminated temporary compensation as of August 13, 1972 as petitioner had returned to work. The notice also terminated medical benefits as of September 7, 1972, at which time petitioner was discharged with a permanent impairment to his thumb. Petitioner argues that this sequence of events mandates setting aside the Industrial Commission's award as it made no separate factual determination as to what, if any, compensation or "status" petitioner was entitled to between his August 13 return to work and his medical discharge on September 7, 1972.

■ Although petitioner has a viable argument, its effectiveness is undermined by his failure to previously challenge that he was entitled to any compensation between the time he returned to work and his medical discharge. As mentioned previously, it is fundamental that petitioner may not raise a new issue for the first time on appeal without first having presented his claim to the Industrial Commission. As there is no automatic right to full compensation during the period of temporary partial disability, we are of the opinion that when earning capacity during this period has not been placed in controversy, there is no obligation on the Com-

mission to make a specific finding. Cf. Hardware Mutual Casualty Co. and Motel 6 v. Industrial Commission, 17 Ariz.App. 7, 494 P.2d 1353 (1972). Therefore, petitioner's failure to raise this issue previously precludes review here.

■ Petitioner's final argument, and again it is raised for the first time on appeal, is that the Commission erred in not applying the conclusive presumption of Ronquillo v. Industrial Commission, 107 Ariz. 542, 490 P.2d 423 (1971), thereby converting a scheduled award into an unscheduled one. We are of the opinion that petitioner was not entitled to even the rebuttable presumption of Ronquillo.

It is clear from a reading of Ronquillo and its subsequent progeny that before the conclusive presumption is available the employee must have had a prior industrial scheduled award. Duron v. Industrial Commission, 16 Ariz.App. 71, 491 P.2d 21 (1971); Rupp v. Industrial Commission, 16 Ariz.App. 121, 491 P.2d 844 (1971); Hollywood Continental Film v. Industrial Commission, 19 Ariz.App. 234, 506 P.2d 274 (1973). Petitioner's testimony indicates that he broke his ankle in 1949 but never lost any time, went back to regular work and did not file an industrial claim or ever receive any industrial benefits. As a consequence, the application of the conclusive Ronquillo presumption was properly withheld.

As to the rebuttable presumption that the prior injury had an effect on the earning capacity of the workman at the time of the second injury, the record is replete with evidence rebutting this presumption. The hearing officer made the following findings:

"9. The evidence indicates that applicant continued to work as a carpenter since 1950; that he received all increments and pay obtained by other carpenters, and he is apparently a skilled carpenter. Although he alleges that after 1970 he was unable to obtain a 50 cent per hour 'bonus' for working more than 30 feet above ground because

his ankle hurt him, such an allegation involves a good deal of speculation as to when such work might have been available, and is more than offset by the evidence of his actual work history as a carpenter up to the injury of June 17, 1971. * * *

"10. The prior impairment of function of applicant's right ankle was not affecting his earning capacity at the time of the injury of June 17, 1971."

These findings are amply supported by the record. Under such circumstances, the award should be affirmed. Camacho v. Industrial Commission, 20 Ariz.App. 225, 511 P.2d 669 (1973).

Affirmed.

OGG and STEVENS, JJ., concur.