530 P.2d 1123

**HOME INSURANCE COMPANY,**
**Petitioner Carrier,**

**Henry C. Beck Company, Petitioner**
**Employer,**

**v.**

**The INDUSTRIAL COMMISSION of**
**Arizona, Respondent,**

**James L. WAGES, Respondent Employee.**

**No. I CA–IC 979.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 23, 1975.

Rehearing Denied March 6, 1975.

Review Denied April 15, 1975.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for petitioner Carrier and petitioner Employer.

Edward F. Cummerford, Phoenix, for respondent The Industrial Commission of Arizona.

Willis & Riggs by W. Blake Willis, Scottsdale, for respondent Employee.

## OPINION

HAIRE, Chief Judge.

On this review of an award entered by the respondent Industrial Commission, the basic issue is whether the responsibility for the payment of the injured workman's continuing medical benefits is that of the petitioning insurance carrier or that of the respondent Commission's Special Fund.[1]

The workman was injured on February 22, 1972 when he slipped and fell from a scaffold. As a result of the fall, he sustained numerous severe injuries, including rupture of the liver, rupture of the gastro-hepatic ligament, subcapcula hematoma of the spleen, fractured wrist, lacerated scalp, lacerated forearm and traumatic myelopathy, complete, and compression fracture of and dislocation and cord contusion, C5–6. As a result of the foregoing injuries, the workman is classified as C5 quadriplegic, complete. On August 18, 1972, some six months after he was injured, he was discharged from the hospital. At that time the insurance carrier issued a notice of claim status terminating his medical benefits. A few days later, the carrier also issued a notice of permanent disability benefits which in effect found the workman permanently and totally disabled, and entitled to the maximum compensation benefits provided under the workmen's compensation law.

At the time of the issuance of the carrier's notice of claim status terminating medical benefits, the workman's need for continuing medical benefits was substantial. At that time, and at all times pertinent to this opinion, A.R.S. § 23–1065 A(2) required the Commission to pay from the Special Fund created pursuant to that section "additional awards for injured employees in such amounts as may be necessary for continuing benefits or medical

1. As used in this opinion, the term "Special Fund" refers to the fund created pursuant to the provisions of A.R.S. § 23–1065. The term "medical benefits" includes all benefits required pursuant to the provisions of A.R.S. § 23–1062 A.

benefits after the period of temporary disability, or after the obligation of the carrier is extinguished under subsection A of section 23–1044 or subsection A of section 23–1045." In contemplation of the possible liability of the Special Fund for the workman's continuing medical benefits, the Special Fund of the Commission timely filed a request for hearing concerning the carrier's notice of claim status which had terminated medical benefits. In its request for hearing the Special Fund contended that the workman's condition had not progressed to the point that it was "stationary", and that therefore the carrier's notice of claim status terminating medical benefits was in error and that the carrier continued to have a responsibility to furnish medical benefits to the workman.

After a hearing at which medical testimony was taken, the Commission's hearing officer issued an award which required the carrier to continue paying the workman's medical benefits "until his condition became stationary". The carrier has duly sought review by this Court of that award.

Initially it must be emphasized that the issue in this review concerns only the question of whether the hearing officer's award requires the petitioning carrier to bear the responsibility for the injured workman's continuing medical benefits beyond a point in time which can be legally justified under the statutes. There is no question concerning the injured workman's *entitlement* to continued medical benefits —the respondent Commission appropriately concedes that under the then existing statutes the Commission's Special Fund will become responsible for these medical benefits at the time the responsibility of the insuring carrier terminates.

Both parties agree that the carrier's legal responsibility for continuing medical benefits terminates when the injured workman's physical condition relating to the injury becomes "stationary". However they completely disagree as to whether the evidence supports the hearing officer's determination that this particular injured workman's condition was not stationary at the time the carrier terminated his medical benefits. Inasmuch as there is no controversy as to the facts relating to this workman's physical condition, and there was only one expert medical witness, the disagreement of the parties can be largely attributed to their differing concepts of what constitutes that point in the ongoing physical condition of an injured workman categorized by Arizona decisional law as a "stationary condition". The petitioning carrier contends that the term "stationary" has consistently been defined in the context of the workman's earning capacity, and therefore, that when applied to a fact situation as in the present case, where it is immediately apparent that the workman's injuries will render him permanently and totally disabled (from an earning capacity standpoint), the condition is "stationary" practically immediately after the initial emergency treatment, and the carrier's responsibility for further medical benefits terminates at that time. On the other hand, the respondent Special Fund disputes any earning capacity concept of the term "stationary", and to the contrary presents a developmental physical condition concept tied closely to a continuing need for medical treatment, urging that the injured workman's "condition is stationary when all bodily systems affected by an industrial injury are stable and not subject to active medical treatment." As though the discrepancy between the concepts advanced by the carrier and the Special Fund were not enough to confuse the issue, the findings entered by the Commission's hearing officer inject a consideration entirely foreign to that espoused by either of the above, and that is that the concept of "stationary" may in some manner be influenced by actuarial considerations relating to the future solvency of the Special Fund.

A determination of these conflicting concepts of the meaning of the term "stationary" requires a review of the statutory and judicial considerations which have given rise to the decisional promulgation of the stationary concept. If a stranger to Arizona law were to thoroughly review our

workmen's compensation laws in order to determine the obligations and responsibilities of the parties to this review, he would not find any reference to obligations commencing or terminating at such time as an injured workman's condition becomes "stationary". Instead he would find that the obligation for the payment of medical benefits by the carrier originates in the provisions of A.R.S. § 23–1062 A, which requires the payment of such benefits "reasonably required at the time of the injury, and *during the period of temporary disability*."[2] In order to understand the limitation to "the period of temporary disability" one must appreciate that under the Arizona statutory scheme an injured workman's entitlement to wage-type compensation is broken down into two major components based upon the physical condition of the workman: (1) that period involving temporary disability, whether total or partial, *see* A.R.S. §§ 23–1044 A and 23–1045 A; and (2) a subsequent period in which permanent disability might be involved, again either total or partial, *see* §§ 23–1044 B and C, and 23–1045 B and C.

The statutes do not define "temporary" or "permanent" as used in these disability provisions so as to provide a readily ascertainable line of demarcation for the purpose of differentiating between rights flowing from a temporary disability status and rights flowing from a permanent disability status. This statutory void has been filled by decisional law through the development of the "stationary condition" concept. Under this concept when an injured workman's condition becomes stationary, his entitlement to temporary disability benefits terminate and his entitlement, if any, to permanent disability benefits commences. Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 (1935); Minton v. Industrial Commission, 90 Ariz. 254, 367 P.2d 274 (1961); Employers Mutual Liability Insurance Company of Wisconsin v. Contreras, 109 Ariz. 383, 509 P.2d 1030 (1973); Continental Casualty Company v. Industrial Commission, Ariz., 528 P.2d 817 (1974); Hardware Mutual Casualty Company v. Industrial Commission, 17 Ariz.App. 7, 494 P.2d 1353 (1972); Aragon v. Industrial Commission, 14 Ariz. App. 175, 481 P.2d 545 (1971).

An early Supreme Court decision, Ossic v. Verde Central Mines, *supra,* discussed this concept as follows:

"The compensation act (Rev.Code 1928, § 1391 et seq.) contemplates that when an employee is injured from an accident arising out of and in the due course of his employment he shall receive temporary disability compensation *until such time as his condition becomes static,* at which time if there be any continuing disability, it shall be considered permanent and future compensation shall be awarded him on that basis." (Emphasis added). 46 Ariz. at 181, 49 P.2d at 399

2. Reference is to the provisions of A.R.S. § 23–1062 A. Subsection A provided as follows:

"A. Promptly, upon notice to the employer, every injured employee shall receive medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members, reasonably required at the time of the injury, and during the period of temporary disability. Such benefits shall be termed 'medical, surgical and hospital benefits.'"

Unless otherwise indicated, reference in this opinion is to statutory provisions in effect on February 22, 1972, the date of the injury. The history of this particular statutory provision demonstrates a liberalizing trend in Arizona's workmen's compensation law directed towards increasing the carrier's responsibility for medical benefits. Thus we find in § 1428 of the Revised Code of 1928 that medical benefits available to the injured workman were limited to such benefits "as may be reasonably required at the time of the injury and within ninety days thereafter, which time may be extended to one year by the commission." Subsequent amendments in 1939 (§ 1, Chap. 28, Laws 1939) and in 1971 (§ 19, Chap. 173, Laws 1971) extended the carrier's responsibility to that above-quoted. In 1973, § 23–1062 A was further amended so as to increase the injured workman's right to medical benefits to "during the period of disability" (note the omission of the word temporary) so as to apparently include both the period of temporary and permanent disability. (*See* § 30, Chap. 133, Laws 1973).

In Ossic the court recognized that the point at which temporary disability ends and permanent disability commences may come into existence even though there is a continuing need for medical treatment, stating:

"After some four years of treatment, most of his physicians concurred in a report that it was very unlikely medical and surgical treatment could improve his condition, *though his sinuses were apparently in such a condition that they needed continual irrigation and cleansing to prevent a spreading of an infection . . . .*" (Emphasis added). 46 Ariz. at 180, 49 P.2d at 398

And later in the opinion:

"We consider first the question as to whether the commission was justified in finding that petitioner's *condition had become static so that they were entitled to change the award from a temporary to a permanent one.* Most of the medical witnesses agreed that his condition as it existed on March 16, 1934, *would probably remain practically the same during his lifetime.*" (Emphasis added). 46 Ariz. at 181, 49 P.2d at 398

The court then concluded that the Commission was justified in finding "that the temporary condition had become a permanent one".

Although in later decisions the Arizona courts have used the term "stationary" rather than "static" as was used in Ossic, the matters considered by the Ossic court have remained in the mainstream of considerations guiding later determinations of the dividing line between a temporary disability and a permanent disability. In Aragon v. Industrial Commission, *supra,* we reviewed several prior Arizona decisions and stated:

"The thread running through all of these decisions is that the term 'stationary' refers to that time when the physical condition of the employee resulting from the industrial injury has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition." 14 Ariz. App. at 176, 481 P.2d at 546

In the latest Arizona Supreme Court pronouncement on the subject of which we are aware, that court employed and quoted the Aragon test of "stationary" set forth above. *See* Continental Casualty Company v. Industrial Commission, *supra.*

■ In summary, it is our opinion that in deciding whether an injured workman's condition has become stationary, it is important to keep in mind that the objective is to determine whether, with the passage of time, the workman's physical condition has evolved to that point where it can no longer be considered temporary, but rather should be considered permanent. Recognizing that there are no absolute standards which can be used, the decisions have nevertheless developed the general guidelines which we have set forth in Aragon as being whether the workman's physical condition has reached a "relatively stable status" so that nothing further in the way of medical treatment is indicated to improve that condition. As indicated in Ossic, this status may be reached even though the workman's physical condition may involve a continuing need for medical benefits.[3] On the other hand, it cannot be said that the need for continuing medical benefits is completely immaterial, if the evidence indicates that the need is directed toward a *recovery* from the physical condition resulting from the injury as compared to merely maintaining the status quo.

■ Applying these principles, we reject the petitioning carrier's contention that the term "stationary" should be defined in the context of the workman's earning capacity. We find no support for this contention. Our review of the pertinent Arizona deci-

---

3. A.R.S. § 23–1065 A(2), by requiring the Special Fund to provide medical benefits "after the period of temporary disability", constitutes express statutory recognition that the need for continuing medical benefits is not conclusive in the determination of whether the workman's condition has become stationary.

sions, previously discussed herein, convinces us that while the workman's entitlement to wage-type compensation benefits after his condition has become stationary may be completely dependent upon whether he can establish an earning capacity disability, it is the ongoing development in his actual physical condition resulting from the injury which is pertinent to the determination of what point in time his condition becomes stationary. Petitioner's reliance upon this court's decision in Hardware Mutual Casualty Company v. Industrial Commission, *supra,* is misplaced. In quoting from that opinion, counsel has inadvertently omitted certain words which, when included, indicate clearly that the court was referring to the indirect effect which the claimant's physical condition might have on his earning capacity.[4] It follows that notwithstanding the fact that shortly after the accident it was here apparent that the claimant would be totally or permanently disabled in an earning capacity sense, still his physical condition could not be classified as stationary until such time as might be indicated by the application of the standards we have discussed.

We also reject the respondent Special Fund's contention that a workman's stationary condition is somehow governed by his need, or lack of need, for continuing medical benefits for the treatment of his injuries. As we have indicated, such a need is material only to the extent that there is a showing that the workman's physical condition has not reached a rela-

tively stable status so that continuing medical treatment is indicated in a reasonable attempt to improve, rather than merely maintain, his condition.[5]

Directing our attention to the medical record in this claim it appears that at the time of the hearing, petitioner's condition and need for ongoing medical treatment was essentially related to his quadriplegic condition. The medical testimony is well summarized in the hearing officer's findings as follows:

"At the hearing held on December 14, 1972 Dr. Vivian testified, in part, that the lack of central nervous system control over bodily functions leaves quadriplegics susceptible to constant change . . . ; that the applicant's condition will deteriorate; that from a neurological point of view the applicant's condition will not improve but that applicant's general health situation is always precarious, subject to waxings and wanings, ups and downs, illnesses, and all sorts of possible complications because of the nature of his injury."

The possible complications in the applicant's general health occasioned by his quadriplegic condition include:

"(1) Breakdown of the skin, (2) genitourinary infection leading to severe kidney damage, (3) respiratory complications, including pneumonia due to impaired breathing and coughing, and (4) metabolism disturbances due to impaired sweating, breathing, and glandular function."

---

4. "Petitioners' second contention is somewhat more difficult to answer. Our workmen's compensation laws contemplate that an injured employee might pass physically through three stages following his injury: * * * (3) his condition has become medically stationary, that is, his condition cannot be medically improved to increase *his activities and hence increase* his earning capacity." (Emphasis added). 17 Ariz. App. at 9–10, 494 P.2d at 1355.
The emphasized words were omitted by petitioner.

5. This concept is expressed in Employers Mutual Liability Insurance Company of Wisconsin v. Contreras, *supra,* as follows:

"In our opinion, a man's condition becomes stationary when his disability ceases to decrease and his physical condition ceases to improve.
 * * * * *
The employee's attorney should have insisted that the hearing await one or both of the examinations so that someone would be competent to say with some degree of finality *that the patient had been taken along the recovery route as far as possible."* (Emphasis added). 109 Ariz. at 386, 509 P.2d at 1033.

A fair statement of the medical testimony is that although the workman's neurological condition resulting from the injury was stationary, because of the potential medical complications described above his general health will never be stable and will probably gradually deteriorate. The "deterioration" aspect of the testimony is again well-summarized in another finding of the hearing officer:

> "Because of applicant's almost total loss of voluntary control of most of his body and bodily functions, his health is constantly in a state of flux, his condition will constantly deteriorate, require treatment, and then improve, while at the same time it may deteriorate in another respect."

■ In our opinion this type of waxing and waning or constant deterioration and then improvement in the general health of the injured workman resulting indirectly from the industrial injury, is not the type of continuing need for medical treatment which will prevent the workman's condition from becoming stationary so as to entitle him to a permanent, as opposed to a temporary, award. The need for continuing medical benefits we find here is analogous, although greater in scope, to that which confronted the court in Ossic, *supra*. There, notwithstanding the fact that "his sinuses were apparently in such a condition that they needed continual irrigation and cleansing to prevent a spreading of an infection", the court noted that this condition would probably remain throughout his lifetime and that it was very unlikely that further medical and surgical treatment could improve his condition. The court then held that the Commission was justified in finding the condition such that the period of temporary disability had expired and permanent disability had commenced.

■ It is apparent from the hearing officer's finding no. 12 that his finding that the workman's condition had not become stationary was based upon the erroneous foundation that the need for continuing medical treatment described therein mandated such a finding. For that reason the award must be set aside.

■ There is also an additional reason why the award must be set aside. We have previously indicated that the hearing officer's findings show that his concept of "stationary" was in some manner influenced by actuarial considerations relating to the future solvency of the Special Fund. In this vein in finding no. 18 he states:

> ". . . that the premiums charged for funding the Special Fund are fixed by statute and may not exceed two percent (2%) of insurance premiums (A.R.S. 23-1065 (A)); that it is therefore axiomatic that to insure the solvency of the Special Fund the Workmen's Compensation Act must be interpreted in such a manner so that liability of the Special Fund will not exceed its income; that to hold that a catastrophic injury, or any injury, becomes stationary at the time of injury or on the date of discharge from the hospital would obviously place on the Special Fund a liability for supportive care alone far in excess of its possible income, notwithstanding the numerous additional responsibilities of the Special Fund for vocational rehabilitation, second injuries and no insurance claims."

And, again, in finding no. 19:

> "Considering the foregoing statutory provisions together with the limited funding available to the Special Fund as well as that Fund's multiple responsibilities, it is clear that the legislative intent was that A.R.S. 23-1065 (A)(2) act to supplement, not replace, the insurance carrier's responsibility, and provide medical benefits for the catastrophic case (which may never become stationary) only after the expiration of the maximum period of temporary disability as set forth in the statute."

While such concerns for the solvency of the Special Fund might well have been pertinent to the exercise by the Commis-

sion of its discretion to determine whether to assume responsibility for the payment of continuing medical benefits from the Special Fund pursuant to A.R.S. § 23–1065 A(2) prior to its amendment in 1971, they certainly are no longer pertinent. The 1971 amendment to § 23–1065 A(2) made payment of such benefits from the state's Special Fund mandatory, and thereafter the Commission no longer had any discretion to exercise in that regard. The legislature was not unaware that the obligations statutorily placed upon the Special Fund might result in problems relating to its solvency. There is a specific requirement that the Special Fund be annually audited by the Auditor General and that an annual actuarial study be made. Further, the actuary is directed to make "specific recommendations for maintaining the fund on a sound actuarial basis." *See* A.R.S. § 23–1065 C. We further note that apparently the legislature had second thoughts concerning the placing of this mandatory responsibility upon the Special Fund, for in 1973 § 23–1065 A was again amended, removing any responsibility which the Special Fund previously had, whether discretionary or mandatory, to pay continuing medical benefits of the nature here involved. As previously indicated, contemporaneously with this 1973 amendment, A. R.S. § 23–1062 A was also amended so that now the carrier's responsibility for continuing medical benefits is no longer limited to the period of *temporary* disability.

For the foregoing reasons the award is set aside. Under the law applicable to this claim, the responsibility of the carrier for continuing medical benefits continues only during the period of temporary disability.[6] Under Arizona decisional law the period of temporary disability ceases when the injured workman's physical condition becomes stationary. The existence of this stationary condition must be

determined by the Commission in accordance with the principles set forth in this decision.

JACOBSON, P. J., and EUBANK, J., concur.

---

6. Construing A.R.S. § 23–1065 A(2) (as amended, 1971), together with § 23–1062 A (as amended, 1972), the carrier's responsibility for continuing medical benefits cannot exceed the applicable time limitations then set forth in A.R.S. §§ 23–1044 A and 23–1045 A, even though the period of temporary disability might well exceed those time periods.