NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

ALEXA J. LINDQUIST,
*Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

HOSPICE OF THE VALLEY,
*Respondent Employer*,

SENTRY INSURANCE A MUTUAL COMPANY,
*Respondent Carrier*.

No. 1 CA-IC 16-0060
FILED 6-8-2017

———————————————

Special Action - Industrial Commission
ICA Claim No. 20143-210085
Carrier Claim No. 55C168885

The Honorable Layna Taylor, Administrative Law Judge

**AWARD AFFIRMED**

———————————————

COUNSEL

Alexa J. Lindquist, Phoenix
*Petitioner*

Jardine Baker Hickman & Houston PLLC, Phoenix
By K. Casey Kurth
*Counsel for Respondent Employer and Carrier*


Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

_____

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Acting Presiding Judge Peter B. Swann and Judge Maria Elena Cruz joined.

_____

**D O W N I E**, Judge:

**¶1**　　　　This is a special action review of an Industrial Commission of Arizona ("ICA") award.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　In October 2014, while working as a certified nursing assistant for Hospice of the Valley, Lindquist attempted to transfer a patient from the shower to a wheelchair when the patient began to sit before the chair was under her.  As Lindquist held the patient up with her left hand and positioned the wheelchair, she "felt something give" in her left shoulder.  She reported the injury and went to Banner Occupational Health for examination and treatment.  The carrier accepted Lindquist's claim for temporary benefits.

**¶3**　　　　After treating with Banner and completing physical therapy, Lindquist was referred to Dr. Greenfield — an orthopedic surgeon.  Dr. Greenfield ordered an MRI, but found nothing unusual on the MRI relating to Lindquist's shoulder.  He referred her to physical therapy.  Lindquist was subsequently referred to Dr. Bailie, who is also an orthopedic surgeon.  Dr. Bailie believed Lindquist's MRI was normal and recommended "deep tissue work" on her trapezius muscle.  The carrier thereafter sent Lindquist to Dr. Dave for an independent medical examination.  Dr. Dave saw "something" in Lindquist's shoulder but

2

could not determine what it was or how it should be treated. Lindquist received authorization to transfer her ongoing care to Dr. Dave.

¶4         Lindquist saw Dr. Dave several times and also treated with a physical therapist in her office. On August 17, 2015, Dr. Dave discharged Lindquist from care without permanent impairment. Dr. Dave noted that Lindquist had been seen by two "shoulder specialist[s] and had multiple tests of her shoulders done, all of which failed to show any true shoulder pathology." Lindquist thereafter pursued medical treatment on her own, ultimately consulting Dr. McClure. In the meantime, her temporary compensation and medical benefits were terminated as of August 17, 2015 — the date Dr. Dave discharged her as stationary. On August 31, 2015, Dr. McClure recommended shoulder surgery. On September 17, 2015 — the day before the surgery — Lindquist requested a hearing on the termination of benefits.

¶5         After an evidentiary hearing, the Administrative Law Judge ("ALJ") concluded that Lindquist's shoulder surgery "was not reasonably necessary medical treatment for, or causally related to" the industrial injury. The ALJ awarded Lindquist benefits from the date of her industrial injury through August 17, 2015. After the ALJ affirmed her decision upon review, Lindquist filed a timely petition for special action. We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**DISCUSSION**

¶6         We will not disturb an ICA award if it is reasonably supported by the evidence. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). It is the ALJ's duty to resolve conflicts in the evidence, and it is her "privilege to determine which of the conflicting testimony is more probably correct." *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975). We review the ALJ's resolution of conflicting testimony for an abuse of discretion. *Madison Granite Co. v. Indus. Comm'n*, 138 Ariz. 573, 577 n.3 (App. 1983).

¶7         Temporary medical and compensation benefits are properly terminated when a claimant's condition becomes "stationary." *See Home Ins. Co. v. Indus. Comm'n*, 23 Ariz. App. 90, 93–94 (1975) (Defining stationary as when "the workman's physical condition has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition." (internal quotation

marks omitted)). After a condition becomes stationary, the claimant is eligible for permanent benefits only if she establishes the existence of permanent impairment. *Id.* at 93.

¶8 Lindquist essentially asks this Court to reweigh the evidence presented to the ALJ and to reach a contrary conclusion.[1] However, "[w]e do not weigh the evidence, but consider it in the light most favorable for sustaining the award." *Pac. Fruit Express v. Indus. Comm'n*, 153 Ariz. 210, 214 (1987).

¶9 The medical evidence was in conflict. Dr. McClure believed Lindquist "most likely damaged her rotator cuff and labrum and possibly had some impingement" as a result of the industrial injury. During surgery, Dr. McClure determined that the labrum "appeared to have a full-thickness tear from the nine o'clock to twelve o'clock position," which he repaired. He also diagnosed a "partial-thickness" tear in Lindquist's rotator cuff, which he repaired. Dr. McClure believed the shoulder surgery was more likely than not related to the October 2014 industrial injury.

¶10 Based on his examination of Lindquist, Dr. Bailie concluded "the shoulder itself was completely normal." He also reviewed an MRI, medical records from Dr. Dave and Dr. McClure, and an operative report and photographs. Dr. Bailie found "no objective evidence to substantiate that the surgeries performed by Dr. McClure were in any way related to the industrial event." He opined that Dr. McClure "repaired normal portions of the shoulder joint." He testified that roughly 50 percent of his practice involves revision surgeries from orthopedic surgeons who misdiagnose "so-called . . . labral tears." He stated that some studies

---

[1] Lindquist also expresses concern about the ALJ's demeanor. She claims that, during her testimony, the ALJ "began to yell at [her] and it didn't seem to end for a while." She also asserts that at the end of the hearing, the ALJ "proceeded to yell again 'Get her out of here!!! GET HER OUT OF HERE, NOW!!!'" The transcript does not support Lindquist's characterizations. At two points during Lindquist's testimony, the ALJ instructed her to wait until the question was fully asked to respond. And at the close of the hearing, the ALJ stated, "Ma'am, you need to speak to your lawyer because you can't speak to me without speaking to him first. . . . [Counsel], please step outside. [Counsel], please step outside if you want to talk to her."

suggest "up to 70 percent of labral tears in this area are repaired that aren't even labral tears."

¶11        The ALJ resolved the conflict in the medical evidence "in favor of the opinions of Dr. Bailie as being more probably correct and well founded." In making her assessment, the ALJ could properly consider the diagnostic methods used, whether the testimony was speculative, and the "qualifications in backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred." *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988). The ALJ noted that Dr. Bailie is a board-certified orthopedic surgeon "who limits his practice to shoulder and knee surgery." Although a reasonable trier of fact could have reached a different conclusion, the ALJ is charged with resolving conflicts in medical expert testimony, *see Perry*, 112 Ariz. at 398, and there was substantial evidence supporting the determination that Lindquist was medically stationary as of August 17, 2015, without permanent disability, and that her later shoulder surgery was not necessitated by the industrial injury.

**CONCLUSION**

¶12        For the foregoing reasons, we affirm the award of the ICA.



AMY M. WOOD • Clerk of the Court
FILED:  AA