659 P.2d 1313

**James L. McKASKLE, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**New York Life Insurance Company, Respondent Employer,**

**Travelers Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 2590.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 30, 1982.

Rehearing Denied Jan. 28, 1983.

Review Denied Feb. 23, 1983.

Charles Anthony Shaw, Prescott, for petitioner.

James A. Overholt, Acting Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Burch & Cracchiolo, P.A. by John F. Day, Linda A. Finnegan, Phoenix, for respondents Employer & Carrier.

OPINION

CONTRERAS, Judge.

At issue in this special action review of an Industrial Commission award is whether the administrative law judge abused his discretion in dismissing petitioner's claim as being untimely filed without a meritorious excuse. We conclude that this was not the proper test to be employed in this case. We further conclude that respondents would be estopped to assert the statute of limitations if it is determined that the petitioner exercised due diligence in filing his claim within a reasonable period of time after the circumstances giving rise to estoppel ceased to be operational. The award is set aside.

BACKGROUND

The essential dates and events are these:

September 22, 1978 Petitioner was injured, allegedly in the course of employment as an insurance agent.

October, 1978 Petitioner talked to his employment supervisors, Ken Holmes and Dave Best, who told him that they thought he was not covered by workmen's compensation because he was an independent contractor and not an employee.

November, 1978 Holmes and Best again told petitioner that he was not covered by workmen's compensation, again for the same reason given in October.

March, 1979 Petitioner retained an attorney, to whom he indicated that he would not file a workmen's compensation claim.

September 25, 1979 While attending a seminar in California for insurance agents, petitioner learned that during the first three years on the job, an agent was a probationary employee rather than an independent contractor.

October 10, 1979 Petitioner again raised the matter with Best who, several weeks later, confirmed that petitioner was covered by workmen's compensation.

November 20, 1979 Best mailed to petitioner an "Employers Report" which petitioner filled out.

December 10, 1979 The Employer's Report was filed with the Industrial Commission.

February, 1980 Respondent Carrier mailed to petitioner a "Workman's Report".

February 13, 1980 Petitioner filed the workman's report with the Industrial Commission, one year and 4½ months after the injury.

Subsequently, the carrier denied the claim. Pursuant to petitioner's request a hearing was held limited to the question arising from the late filing of petitioner's claim. The administrative law judge issued a decision dismissing the claim. The decision was affirmed on administrative review and this special action review followed.

## EQUITABLE ESTOPPEL

### 1. *Applicability*

■ Since petitioner's claim was filed in 1980, prior to the effective date of the current A.R.S. § 23–1061(A), the late filing is not a jurisdictional bar, but an affirmative defense. *Van Horn v. Industrial Commission,* 111 Ariz. 237, 527 P.2d 282 (1974); *St. Paul Fire & Marine Ins. Co. v. Industrial Commission,* 25 Ariz.App. 595, 545 P.2d 443 (1976).

Petitioner asserts that, by virtue of the misinformation supplied by the respondent employer, the respondent carrier is estopped to assert that affirmative defense. In *Van Horn, supra,* the Arizona Supreme Court adopted the view that

> [T]he doctrine of equitable estoppel may be applied to prevent an employer from raising the bar of the one-year limitation where he had, by his own conduct, caused the employee to forebear filing a claim....

111 Ariz. at 239, 527 P.2d at 284.

■ Respondents contend that estoppel cannot be applied where the claimant cannot satisfy the three-part test of *Kleinsmith v. Industrial Commission,* 26 Ariz.App. 77, 546 P.2d 346, *approved and adopted,* 113 Ariz. 189, 549 P.2d 161 (1976), and its progeny dealing with the power of the Commission to waive an untimely filing. Respondents essentially claim that the estoppel doctrine of *Van Horn* has been supplanted or superseded by the three-part test of *Kleinsmith* and its progeny, or that acts which formerly would have estopped the employer or carrier are to be considered only as indicating a "meritorious reason" underlying the late filing. We disagree. While the acts of the employer or carrier

may constitute a meritorious excuse for a late filing so as to justify a waiver of the one-year limitation, *see Cohen v. Industrial Commission,* 133 Ariz. 24, 648 P.2d 139 (App.1982), such acts may also estop the employer and carrier to raise the limitation in the first place. This court has previously distinguished between estoppel to assert the statute of limitations and a waiver of the statute of limitations; a waiver may be justified even when no grounds for estoppel are shown. *Keeler v. Industrial Commission,* 122 Ariz. 16, 592 P.2d 1282 (App.1979). *Keeler* did not purport to abolish the *Van Horn* estoppel principle.

We also note that the current version of A.R.S. § 23–1061(A) (while not directly applicable to this case) does away with the three-part *Kleinsmith* test for waiver of late filing, and again makes compliance with the one-year limitation a jurisdictional prerequisite, but still maintains an exception

> [i]f the employee or other party entitled to file the claim has delayed in doing so because of justifiable reliance on a material representation by the commission, employer or insurance carrier....

We therefore conclude that the doctrine of equitable estoppel endures and is theoretically available in Arizona workmen's compensation cases, independent of the *Kleinsmith* test for waiver. It remains to be determined whether the facts of this case make an application of estoppel proper.

■ Respondents contend that estoppel is not applicable here because neither the employer nor the carrier perpetrated any fraud or deliberate deception, nor has the petitioner so claimed. Neither *Van Horn* nor *Holmes Tuttle Broadway Ford v. Industrial Commission,* 27 Ariz.App. 128, 551 P.2d 577 (1976), limited the estoppel doctrine to such situations. *See also* 3 A. Larson, Workmen's Compensation Law, § 78.45; *Pino v. Maplewood Packing Co.,* 375 A.2d 534 (Me.1977).

Questions of estoppel can arise in a wide variety of situations. Most common are those in which the employer or carrier says to the injured employee, in effect, "Don't

worry, we'll take care of you," thereby "lulling" the employee into inaction until the filing period has passed. In these situations, the employer and/or carrier are commonly estopped to raise the limitation. Thus, the employer/carrier may be estopped by its actions of paying disability compensation, A.R.S. § 23–1061(B), by paying the employee's medical expenses, *Van Horn, supra,* by promising to "take care of" the employee who need not file an industrial claim, or by promising to file the employee's industrial claim, *Holmes Tuttle, supra.*

Less frequently it is contended that the employer/carrier is estopped to assert the statute of limitations by its *denial* of compensability. Under such circumstances, there is disagreement whether or not estoppel is available. On the one hand, it is held that an employer's statement that the employee has no claim is a denial, not concession, of liability, and cannot reasonably lead the employee to believe that he would receive any benefits. Since the effect is not to "lull" the employee into inaction, estoppel is not applicable. *See Barfield v. General Steel Tank Co.,* 370 So.2d 1005 (Ala.Civ. App.1979); *Drane v. City of New Orleans,* 328 So.2d 752 (La.App.1976).

On the other hand, it has been held that estoppel is equally applicable when the employer or carrier denies liability, either because the injury was not work-related or because the injured workman was not covered by workmen's compensation. *See Levo v. General-Shea-Morrison,* 128 Mont. 570, 280 P.2d 1086 (1955); *Robertson v. Brissey's Garage, Inc.,* 270 S.C. 58, 240 S.E.2d 810 (1978).

In *Levo,* the claimant was informed by the employer that his heart attack was the result of non-industrial disease and not any industrial injury, and that there was no use in filing a claim, "nothing that could be done". The court held that

> [T]he advice here given by the assistant project manager and personnel director and the advice given by a lawyer who the claimant thought to be a company lawyer did not permit the claimant in good conscience to file a claim. Ignorance based on completely erroneous advice from persons who are directly connected with the affairs of the employer can even be more profound and dangerous in its consequence than ignorance based on no advice at all. Such advice effectively prevents a conscientious employee from filing a claim for an award or at least until different advice of equal or higher standing is received. According to the record the conclusion is inescapable that claimant was actually dissuaded from filing a claim by the agents of defendant.

> We find that the doctrine of equitable estoppel should be applied under the facts in this cause.

280 P.2d at 1089–90.

In the present case, respondents contend that petitioner's mistake of law was no defense. While we might agree that a claimant's unilateral mistake as to his entitlement to compensation would not excuse a late filing, that is not the issue presented. Larson recognizes the distinction between a claimant's mistake and an employer-induced mistake. Larson, *supra,* § 78.47. The administrative law judge apparently felt that petitioner had no right to rely on respondent employer's determination of a question of law. In finding number 4 he stated:

> The legal determination by the employer that applicant was not covered was not the employer's decision to make; this initial determination lies with the insurance carrier (or self insured employer) which determination is made upon the filing of a claim with the Industrial Commission. See *A.R.S.* § 23–1061. Upon said filing, the insurance carrier or self insured employer then makes an administrative determination as to whether or not the applicant is in fact entitled to compensation benefits. If the decision is adverse to the injured employee, he then has the right to file for a hearing. This is precisely what happened in the instant matter.

Regarding a similar contention, the *Levo* court stated:

> It is contended that there is involved a question of law as opposed to a question of fact and that the claimant is as respon-

sible for knowing the law regarding the situation as were the insurance company, the employer, the industrial accident board and those others involved. However, even if we were to ascribe to the contention that it is solely a question of law, it would be a very narrow construction of the statutes regarding Workmen's Compensation if this court were to say that a claimant should find it his duty to examine all the technicalities concerning the Workmen's Compensation Act and come to a right conclusion while the employer and the insurance carrier, whose responsibilities are far greater, should be excused because of their misinterpretation of the Act itself, which misinterpretation the employer in turn foisted off upon the claimant.

. . . .

Certainly if there is any circumstance wherein the doctrine of equitable estoppel should be extended, it is in matters concerning an injured workman, where the law itself says that the Workmen's Compensation Act shall be construed liberally.

280 P.2d at 1090.

In *Robertson, supra,* the carrier advised the widow claimant that it had determined that her husband was the president and part owner of the business and not an employee, and that the injury was therefore not compensable. The carrier further advised the widow that she had one year to file a claim, but she failed to make a claim until almost three years after the injury. The court held that the employer and carrier were, by virtue of the statement of noncompensability, estopped to raise the one-year statute of limitations. The court restated the principle of equitable estoppel and applied it thus:

The conduct of defendant and its insurance carrier may be such as to estop them from presenting the statutory limitation as a defense in bar of the claim for compensation, if the effect of such conduct was to mislead or deceive claimant, whether intentionally or not, and induce him to withhold or postpone filing his

claim petition until more than a year had elapsed from the occurrence of the accident.

. . . .

In the present case, the appellants [employer and carrier] were under no obligation to consult with the respondent [claimant] or to explain the basis for their denial of liability. However, having undertaken such a duty, the appellants are not in a position to invoke the respondent's failure to act if such failure was a reasonable result of appellants' gratuitous acts.

Although the carrier acted in good faith, the fact is inescapable that it occupied a position far superior to that of the claimant. The claimant was ignorant of the Workmen's Compensation Act and of business practices generally. This factor may be taken into account in determining whether the claimant was misled. . . . We also feel that it may properly be considered in determining whether the claimant's reliance was justified. Although claimant was advised that she could file a claim, it was reasonable under the circumstances for her to feel that such would be a futile gesture in view of the positive assertion by the carrier of the reasons why the death was not compensable. . . . It is clear to us that the words of the adjuster were being accepted by the claimant without question, which is not strange when considered in the light of the disparity between the knowledge and experience of the parties. We feel that the failure of the claimant to file a claim was a reasonable reaction to the initiative taken by the carrier.

240 S.E.2d at 811–12 (citations omitted). We hold that the employer and carrier may be estopped to raise the statute of limitations, either by assurances that the claimant will be "taken care of" or, as here, by management personnel declaring that the claimant has no claim since he was an independent contractor and not an employee. The claimant may be equally harmed by his reasonable reliance on either "positive" or "negative" assertions. Nor are we persuaded that a characterization of coverage

or compensability as a "question of law" renders the principle of estoppel inapplicable.

## 2. *Effect*

The administrative law judge apparently recognized that there was some room for applying estoppel to the employer's assertion of the one-year limitation and that if petitioner had filed his claim in September 1979, respondents would have been estopped from raising this defense. The award quoted and discussed *Van Horn* and concluded:

> In the instant matter, as stated hereinabove, the evidence is uncontroverted that the applicant's supervisors told him they "thought" he was not covered. Does the employer's ignorance of its employee's right to file a claim constitute such conduct barring said employer from raising the one-year limitation for filing a claim? In the *Van Horn* case, the employer led the injured employee to believe that he had nothing to worry about inasmuch as said employer would take care of his hospital bills, etc.; in the instant matter, the defendant employer made no such promises, paid no compensation or medical benefits to the applicant as a result of his accident, and there is no evidence that said employer refused to permit the applicant to file a claim.
>
> . . . .
>
> However, the evidence clearly establishes that the applicant became educated as to his right to file for benefits in late September; had he filed his claim at that time, *the undersigned would have no trouble in finding the employer would be estopped from asserting the one-year limitation.* However, as stated hereinabove, the applicant still waited over four months before he finally filed his claim.

(emphasis added).

While neither the chronology of events nor the meaning of the above finding is perfectly clear, we conclude that the administrative law judge found that petitioner learned that he was covered about a year after the injury and, had he acted promptly then, respondents would have been estopped to assert the limitation. It appears that the hearing judge further reasoned that petitioner continued to delay, thereby terminating the estoppel and bringing the *Kleinsmith* test into play, and that petitioner failed to satisfy one or more of the requirements of that test. The administrative law judge further found:

> 4. That although the applicant testified he made some efforts to file a claim in November or December of 1979 by filing his claim on the employer's report, the record is still not really clear as to why he failed to file his claim until February 14, 1980. It is the conclusion of the undersigned that said applicant has failed to show a meritorious reason for waiting the additional four and a half months before he finally did file his claim. . . . Furthermore, even if it were determined the applicant did have a meritorious reason for his late filing, he has the burden of further showing that the facts do not establish excessive delay and that said delay did not prejudice the insurance carrier. *Keeler v. Industrial Commission,* 125 Ariz. 333, 609 P.2d 603 (1980).
>
> 5. That in considering the totality of the testimony and evidence herein, it is the conclusion of the undersigned the applicant has failed to carry his requisite burden of showing a basis for excusing his untimely filing of his claim; accordingly, his application for compensation benefits should be dismissed.

The administrative law judge applied the *Kleinsmith* test to the 4½-month delay from September 1979 to February 1980. We believe he erred in doing so, in effect ignoring the fact that the delay from September 1978 to September 1979 was caused by respondent employer's incorrect representations.

Had respondents made no incorrect representations to petitioner, and had the entire delay in filing been attributable to petitioner himself, then the *Kleinsmith* test would have been applicable, and the burden would have properly been on petitioner—to show that the 4½-month delay was excusable, not excessive, and not prejudicial. Here the administrative law judge applied the same

test, in effect ignoring the question of which party was responsible for the first 12 months' delay.

■ We believe that petitioner's delay after September 1979 is to be measured, not against the *Kleinsmith* standard, but against the standard of due diligence. As stated in an annotation on the subject:

The general rule appears to be that a plaintiff may not invoke the doctrine of equitable estoppel against a defendant unless the plaintiff exercises due diligence in commencing the appropriate legal proceeding after the circumstances giving rise to estoppel have ceased to be operational, that is, after plaintiff has notice, actual or constructive, that he must resort to legal recourse and may no longer rely upon agreements, promises, representations to the contrary, or conduct or deceptive practices which may have lulled him into a sense of security.

`. . . .`

Where a plaintiff is justifiably lulled into delaying commencement of an action until after the statute of limitations has run; and where, thereafter, plaintiff is guilty of a second delay in that he fails to bring an action immediately after cessation or termination of the circumstances justifying his delay, there appears to be a difference of opinion among the courts as to the test to be applied in determining whether such delay should bar estoppel, with some courts holding that plaintiff must file his action within a reasonable time after the circumstances inducing delay have ceased to be operational, and with other courts holding that the plaintiff has a period equal to the original statutory period for bringing the action after the cessation or termination of such circumstances.

Annotation, Plaintiff's Diligence as Affecting his Right to Have Defendant Estopped from Pleading the Statute of Limitations, 44 A.L.R.3d 760, 764 (1972). The majority, and we believe the better, view is that the estoppel ceases, and the time to act begins, when the claimant becomes aware of the need to take action and ceases to rely on the

representations of the employer. *See, e.g., Industrial Indemnity Co. v. Industrial Accident Commission,* 115 Cal.App.2d 684, 252 P.2d 649 (1953); *McMeekin v. Prudential Ins. Co.,* 348 Pa. 568, 36 A.2d 430 (1944); *Skipper v. Marlowe Mfg. Co.,* 242 S.C. 486, 131 S.E.2d 524 (1963); *Duncan v. Gaffney Mfg. Co.,* 214 S.C. 502, 53 S.E.2d 396 (1949).

■ In this case, the administrative law judge specifically found it was the first week of October 1979 when petitioner actually learned that he was in fact an employee and would be covered for an industrial accident. The record clearly indicates that it was at that time that petitioner ceased to rely on respondent employer's previous incorrect representations. We therefore conclude that petitioner's reasonable time for filing his claim commenced in the first week of October 1979. Petitioner filed his claim some four months thereafter. The question then becomes whether under the attendant circumstances petitioner exercised due diligence in filing his claim after the circumstances giving rise to the estoppel ceased to be operational. This is the ultimate question to be resolved by the administrative law judge as the trier of fact.

Although it is clear from the record that a valid claim was not filed until some four months after the circumstances giving rise to the estoppel ceased to be operational, the record also reflects that a substantial portion of this delay was occasioned by the respondent employer providing petitioner with the wrong report form, *see Cohen v. Industrial Commission, supra,* and that when petitioner was finally furnished with the correct report form, his claim was filed within one or two weeks thereafter. Although these attendant circumstances strongly suggest the petitioner exercised due diligence we cannot so conclude as a matter of law. This is a determination which will have to be made by the administrative law judge after conducting a hearing in accordance with the guidelines set forth in this decision.

## CONCLUSION

■ By way of conclusory summarization, we hold that where a claim is not filed

within the one-year period allowed by statute, and the failure to file results primarily from incorrect representations by the employer or carrier, on which the claimant has justifiably relied, the employer and carrier are estopped to raise the one-year limitation, if it is determined that the claimant exercises due diligence in filing the claim after the circumstances giving rise to the estoppel cease to be operational.

The award is set aside.

HAIRE and GRANT, JJ., concur.