680 P.2d 1203

**Richard L. HOLLER, Petitioner Employee,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Mort's Body Shop, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 17168–PR.**

Supreme Court of Arizona,
In Banc.

March 21, 1984.

Tretschok, McNamara & Clymer, P.C. by Dale D. Tretschok, Tucson, for petitioner.

James A. Overholt, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, Phoenix, State Compensation Fund by Smith Michael, Tucson, for respondents Employer & Carrier.

CAMERON, Justice.

We granted a petition for review of a decision and opinion by the Arizona Court of Appeals, Division One, which affirmed the denial by the administrative law judge of Richard Holler's request for a hearing concerning the determination of his average monthly wage. *Holler v. Industrial Commission*, 140 Ariz. 148, 680 P.2d 1209 (App.1983). We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5, and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We granted the petition for review to decide only one issue: whether petitioner's untimely request for a hearing on the issue of his average monthly wage was excusable under A.R.S. § 23–947(B)(1).

The facts necessary for a resolution of these issues are as follows. Petitioner commenced working for respondent employer Mort's Body Shop as a bodyman on 7 July 1980. On 27 October 1980 he sustained a severe tear of his right biceps muscle. He submitted an industrial claim, which was accepted by respondent carrier. Based upon earnings information furnished by petitioner's employer, the carrier prepared a "Recommended Average Monthly Wage Calculation" which was then delivered to the Industrial Commission. This document stated that petitioner earned a total of $3,683.50 between 7 July 1980 and 27 October 1980. This number was then divided by 112, the total number of days petitioner had worked, to obtain petitioner's daily wage of $32.89. This daily wage was then multiplied by 30.416, the number of days in a month. This produced the figure of $1,000.38, which was designated by the carrier as petitioner's average monthly wage.

On 6 January 1981 petitioner was notified by the Industrial Commission that the carrier's determination of average monthly wage had been approved by the commission. The notice did not indicate petitioner's total wages for the period, but stated the average monthly wage of $1,000.38 as determined by the carrier was approved and that the "AVERAGE MONTHLY WAGE as independently determined by the Industrial Commission pursuant to [A.R.S.] 23–1041" was $1,000.38. At the bottom of the form containing this notification was the following message printed in red letters:

NOTICE TO CLAIMANT: If you do not agree with this notice, and wish a hearing on the matter, your written request for hearing must be received at either office of the Industrial Commission listed below within NINETY (90) DAYS after the date of mailing of this NOTICE, pursuant to A.R.S. Section 23–941 and 23–947. IF NO SUCH APPLICATION IS RECEIVED WITHIN THAT NINETY DAY PERIOD, THIS NOTICE IS FINAL.

Several weeks after receiving this notice, but within the ninety-day period, petitioner received his W–2 income tax form from his employer which stated that petitioner had been paid $4,219.10 by Mort's Body Shop in 1980. Comparing this figure with his average monthly wage determination, petitioner concluded that the latter figure "didn't look right." He did nothing, however, until June or July of 1981, when he consulted his attorney concerning a different matter. This was the first time he had discussed his claim with an attorney. His attorney told him that the average monthly wage computation was incorrect. Further investigation revealed that petitioner's employer had failed to include petitioner's last two weeks of pay when computing petitioner's total wages. At an administrative hearing concerning this issue, petitioner gave the following testimony:

Q Okay. Why didn't you do something about that notice when you received it?

A Well, I didn't really think anything of it. I relied on my employer to have done it right, which I just assumed it

was. I hadn't even noticed any difference until I seen my W–2 form.

Q Okay. At the time you saw your W–2 form did you go back and make any calculations or recomputations?

A Yes. Roughly, I did, yes.

Q When was that?

A The early part of January of 1982, or '81.

Q Did you think there was anything wrong with your wage at that time? Did you do anything else with—

A I never done anything else with it. It didn't look right, but I just—I never done anything about it.

Q Okay. Did you continue to rely on your employer, then?

A Yes, sir.

\* \* \* \* \* \*

Q When was the first time that you actually learned there was an error in your wage?

A Well, I went to your office and you calculated it out on your calculator.

Q And that was approximately when? June or July of this year?

A I don't really remember if it was June or July. I'm not positive what month.

Petitioner filed a petition for late filing on 3 August 1981, approximately four months late. A hearing was held concerning the petition at which time Terry Mort, petitioner's employer, admitted that the $3,683.50 figure was erroneous, and that petitioner's total earnings through 27 October 1980 should have been reported as $4,024.10. Mr. Mort testified:

Q So the $3,683.50 figure should in fact be $4,024.10?

A That's correct. I noticed that the other day when the other attorney from the State Compensation Fund called me. Evidently the last two weeks that he worked had not been logged on that report when it was sent in.

After hearing testimony, the administrative law judge issued an award dismissing petitioner's request for a hearing concerning average monthly wage. The judge made the following findings:

5. The evidence of record on point does not bring the applicant within the ambit of the above-identified statute on point. The record does not reflect that the NOTICE OF AVERAGE MONTHLY WAGE in question was not received; nor that the applicant was or is suffering from insanity or legal incompetence or incapacity; nor that there was justifiable reliance on the carrier.

6. Accordingly, the applicant's "failure to file with the commission within the required ninety days \* \* \* means that the (average monthly wage) determination by the commission \* \* \* is final and res judicata to all parties"; and that the aforesaid failure to file within the required time "shall not (be) excuse(d)." A.R.S. § 23–945 B, \* \* \*. A fortiori, the applicant's REQUEST FOR HEARING must be dismissed.

This award was affirmed on administrative review. Petitioner then filed a Petition for Special Action-Industrial Commission with the Court of Appeals.

The Court of Appeals affirmed the award of the administrative law judge, stating that petitioner did not exhibit justifiable reliance upon his employer, the carrier, or the commission. *Holler*, supra, at 150, 680 P.2d at 1211. The court reasoned that in

[a]pplying the reasonable diligence standard to this case, we agree with the administrative law judge's conclusion that claimant's reliance was not justifiable. Claimant received a notice that clearly informed him that he had a right to protest the average monthly wage determination and that he had 90 days within which to protest. Shortly thereafter, he received wage information from his employer (W–2 form) that appeared inconsistent with the previously issued average monthly wage determination. Instead of inquiring about the apparent inconsistency or protesting the average monthly wage determination, he did nothing until well after the passage of 90

days. This conduct was not reasonably diligent.

*Id.*

The relevant statute states in part:

A. A hearing on any question relating to a claim shall not be granted unless * * such request for a hearing is filed within ninety days after the notice [is] sent * *.

  * * * * * *

B. * * * Failure to file with the commission within the required ninety days by a party means that the determination by the commission, insurance carrier or self-insuring employer is final and res judicata to all parties. The industrial commission or any court shall not excuse a late filing unless any of the following apply:

1. The person to whom the notice is sent does not request a hearing because of justifiable reliance on a representation by the commission, employer or carrier.

A.R.S. § 23–947.

We believe that in the instant case the petitioner had the right to and did rely upon "a representation by the commission, employer or carrier":

[w]hile in its strict sense, a "representation" is an assertion or statement of some fact, it may also include an implied representation by conduct that a fact exists, including both express and implied statements, so that whatever word, action, or conduct conveys a real impression that a fact exists is embraced in the term.

*Winslow v. Burns*, 47 N.M. 29, 34, 132 P.2d 1048, 1050 (1943), citing *Ricks v. State*, 8 Ga.App. 449, 451–52, 69 S.E. 576, 577 (1910), as quoted in Words and Phrases, Perm.Ed., Vol. 37, at 33. *See also Nielson v. Flashberg*, 101 Ariz. 335, 339, 419 P.2d 514, 518 (1966).

In the present case, the employer was required to notify the carrier of petitioner's wages during his period of employment. When the employer reported this figure to the carrier, he essentially represented that this figure was accurate and that this was, indeed, the total wage earned by petitioner. Petitioner is not expected to automatically mistrust his employer and suspect his employer had given incomplete or false figures to the carrier. We believe the employer made a representation upon which the petitioner could rely for purposes of A.R.S. § 23–947(B)(1).

The same can be said of the carrier which, after receiving this information, passed the determination along to the commission. In deciding this, we take into consideration the relative knowledge and sophistication of the petitioner and carrier. We agree with the reasoning of the South Carolina Supreme Court:

Although the carrier acted in good faith, the fact is inescapable that it occupied a position far superior to that of the claimant. The claimant was ignorant of the Workmen's Compensation Act and of business practices generally. This factor may be taken into account in determining whether claimant was misled. * * * We also feel that it may properly be considered in determining whether the claimant's reliance was justified.

*Robertson v. Brissey's Garage, Inc.*, 270 S.C. 58, 64, 240 S.E.2d 810, 812 (1978), quoted in *McKaskle v. Industrial Commission of Arizona*, 135 Ariz. 168, 172, 659 P.2d 1313, 1317 (App.1982).

■ Likewise the petitioner could justifiably rely upon the representation made by the Industrial Commission. The Industrial Commission is not in an adversarial relationship with claimants, *Allen v. Industrial Commission*, 87 Ariz. 56, 68, 347 P.2d 710, 718 (1959). Its position is more properly viewed as that of a neutral arbitrator whose "duty [is] 'to ascertain the substantial rights of the parties and to carry out the spirit' of the statute which it has the responsibility to administer." *Id.* One of the commission's responsibilities is to make an "independent determination" of average monthly wage. A.R.S. § 23–1061(F).

■ In the instant case it appears the commission did not make an independent determination of the average monthly

wage submitted by the carrier, but merely accepted said determination without further inquiry. Admittedly, an independent determination may consist of the use and recomputation of figures presented by the carrier, *Harris v. Industrial Commission*, 24 Ariz.App. 319, 321, 538 P.2d 406, 408 (1975), a brief memo of a phone call to the claimant's employer, *Mills v. Industrial Commission*, 23 Ariz.App. 28, 31, 530 P.2d 385, 388 (1975), or a written order signed by an authorized member of the commission, *Stemkowski v. Industrial Commission*, 27 Ariz.App. 457, 458–59, 556 P.2d 11, 12–13 (1976). However, by certifying as it did here that it has made an independent determination of average monthly wage, the commission represented to the petitioner that the total wage used to compute the average monthly wage was accurate. When a neutral arbitrator, like the commission, certifies that an independent determination has been made, a claimant is justified in relying on the accuracy of that determination. We believe that under A.R.S. § 23–947(B)(1), petitioner justifiably relied on the commission's representation that the carrier's determination of average monthly wage based upon the employer's total wage was accurate.

Petitioner is not an accountant or businessman but a workman without any particular knowledge concerning the computation of average monthly wage. The commission did not set forth in its notice the total amount of petitioner's wages, an amount which petitioner could have compared with his W–2 form, but merely set forth the average monthly wage of $1,000.38. Petitioner could reasonably expect that this was a correct computation from accurate information concerning his total wages.

We agree with the dissent in the Court of Appeals opinion:

Thereafter the commission sent to claimant a notice of average monthly wage indicating that the "average monthly wage as independently determined by the Industrial Commission" is $1,000.38. The commission is statutorily mandated to make the independent determination. A.R.S. § 23–1061(F). *But see Stemkowski v. Industrial Commission*, 27 Ariz.App. 457, 556 P.2d 11 (1976), which was decided before the amendment to A.R.S. § 23–947 as set forth in footnote 1, Laws 1980, Ch. 246, § 25. The record does not disclose evidence that there was an independent determination of this figure by the commission. The figure is flat wrong. An independent determination would have disclosed exactly what "subsequent investigation" disclosed in the words of the majority: "Subsequent investigation revealed that the employer had inadvertently omitted the claimant's last two weeks' wages from the wage base used to calculate the average monthly wage."

Although, as the majority points out, "the carrier and the commission had no intention to deceive the claimant," the claimant has been misled to his prejudice.

\*       \*       \*       \*       \*       \*

Under the facts of this case, when the commission represented to claimant that it had "independently determined" his average monthly wage at $1,000.38, claimant was entitled to "justifiable reliance" on the representation regarding the determination and the amount which should excuse his late filing. A.R.S. § 23–947(B)(1).

*Holler*, supra, 140 Ariz. at 152, 680 P.2d at 1213 (Corcoran, J., dissenting).

■ Fifty years ago we stated that, "[w]e know of no reason why the commission should not have the power and right to make its records speak the truth." *Hamer v. Industrial Commission*, 43 Ariz. 349, 351, 31 P.2d 103, 104 (1934). We continue to adhere to this reasoning and hold that under A.R.S. § 23–947(B)(1) petitioner's late filing for a hearing is excusable.

As to the other issues raised, we approve the opinion of the Court of Appeals. That portion of the Court of Appeals opinion concerning the request for a late filing is

vacated. The award of the Industrial Commission is set aside.

HOLOHAN, C.J., GORDON, V.C.J., and FELDMAN, J., concur.

HAYS, Justice, dissenting.

I dissent from the majority opinion on the one issue discussed. I believe that the majority opinion of the court of appeals is correct. The conduct of the claimant was not reasonably diligent as shown by the undisputed facts. The position of the majority makes the theory of viable *res judicata* a weak reed indeed.

I dissent.