754 P.2d 317

**CAJUN CABLE COMPANY, INC.,**
Petitioner Employer,

No Insurance Fund of the Industrial
Commission of Arizona,
Petitioner Carrier,

v.

The **INDUSTRIAL COMMISSION OF
ARIZONA,** Respondent,

Gary W. Field, Respondent Employee,

Fremont Indemnity Company,
Respondent Carrier,

Olsten Temporary Services,
Respondent Employer,

The Continental Insurance Company,
c/o Underwriters Adjusting
Company, Respondent Carrier.

No. 1 CA–IC 3609.

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 29, 1987.

Reconsideration Denied Feb. 10, 1988.

Review Denied June 1, 1988.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A., by J. Victor Stoffa, Phoenix, for petitioner employer.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Com'n of Arizona No Ins. Fund, Phoenix, for respondent.

Taylor & Schaar by Donald F. Schaar, Phoenix, for respondent employee.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for respondent carrier.

## OPINION

FIDEL, Judge.

This special action review of an Industrial Commission award arises from the Administrative Law Judge's dismissal of petitioners' requests for hearings as inexcusably untimely under A.R.S. § 23–947(B). Both the employer, Cajun Cable Company, Inc., and the No Insurance Fund of the Industrial Commission of Arizona have petitioned from the decision upon review affirming the award.

Cajun Cable and the Fund had sought a hearing in order to challenge the Industrial Commission's determination that Cajun Cable was uninsured and that the workers' compensation insurance it had purchased from Fremont Indemnity Company was not yet effective as of the time of the industrial injury of Cajun Cable's employee Gary W. Field. The Fund, established by A.R.S. § 23–1065 (amended 1986), is responsible for paying compensation benefits awarded to injured workers employed by uninsured employers. *See* A.R.S. § 23–907(B). These payments plus a penalty become a lien against the uninsured employer's property. *See* A.R.S. § 23–907(C). By their requests for hearing in this case Cajun Cable and the Fund sought to establish Fremont's coverage; the Fund thereby sought to avoid liability for compensation benefits, and Cajun Cable sought to avoid a lien.

We consider whether the administrative law judge abused his discretion in rejecting the position of the employer and the Fund that their untimely requests for hearing resulted from justifiable reliance on the misrepresentation by Fremont that, as of the time of Field's industrial injury, the employer was not insured.[1]

### Facts

In mid-February 1983, the employer decided at its annual corporate meeting to convert the status of its cable installers from independent contractors to employees. The employer's president, Mike Dubea, met with his insurance agent, Fred Patterson, to discuss obtaining workers' compensation coverage beginning March 1, 1983. Patterson, the self-employed owner of the Fred Patterson Insurance Agency and an authorized agent of Fremont, had authority to bind Fremont for such coverage.

Dubea testified that he first met with Patterson in mid-February and then phoned

---

1. We initially issued our disposition of this case as a memorandum decision pursuant to Rule 28, Arizona Rules of Civil Appellate Procedure. Both petitioners thereafter filed motions for reconsideration pursuant to Rule 22, Arizona Rules of Civil Appellate Procedure. Upon reconsideration we have decided to withdraw our initial decision, expand the discussion of the position of the No Insurance Fund, and designate our revised disposition as an opinion.

in late February 1983 to confirm that the coverage was effective March 1, 1983. Dubea testified that Patterson told him "Fine. I will have it covered. It will begin March the 1st. Don't worry about it." The agent did not remember the date he talked to Dubea, but testified that, as a result of the call, he filled out an application for insurance, listed the date of inception as March 1st, and signed it, dated March 1, 1983.

On March 3, 1983, the employee, Gary Field, was injured on the job. He reported his injury to the employer's insurance secretary, Linda Petruso, on March 7th or 8th, and she called Patterson to ask how to file a claim. Petruso testified that Patterson told her the paperwork had not gone through, the employer was not covered by workers' compensation insurance until March 8, 1983, and Cajun Cable should therefore pay the employee's medical bills itself. Patterson testified that the claim was called in after he had filled out the application and that after the call he changed the application date from March 1 to March 8, 1983, before he mailed it to the carrier. He explained the date change by saying, "I just remember somebody called the claim in and I said: 'Wait a minute. Mike just called the coverage in yesterday. There wouldn't be coverage back then. There was no coverage in force at that time.'" The carrier received the application on March 10, 1983, and began coverage on March 8, 1983.

On April 6, 1983, the employee filed a claim for benefits with the Industrial Commission. Terri Plew, the supervisor of the No Insurance Fund, testified that the Industrial Commission assessed whether there was insurance on the claim by consulting its computer to see if the employer had current coverage. The information on computer is entered through an "006 card", by which the insurance companies report the name of the policy holder and the policy period whenever workers' compensation coverage is issued or renewed. The Commission's computer search revealed that coverage had not begun until March 8, 1983. A manual search of the Commission files led to the same conclusion. Finally, finding no coverage for the employer as of March 3, the date of injury, the Fund phoned the employer for more information. The Fund's files show that the employer responded "that as far as they knew there was no insurance on that day either."

On May 24, 1983, the Industrial Commission, relying on the representations of both the employer and the carrier that there was no insurance in effect on March 3rd, issued an award of compensability, finding, among other things, that the employer lacked insurance on the date of injury. None of the parties filed a request for hearing within the 90–day protest period, and the award became final on August 23, 1983. *See* A.R.S. § 23–947.

Although Mike Dubea was upset when Linda Petruso told him there was no coverage on the date of Field's injury, he neither contacted the agent nor the carrier. He did, however, mention the problem to his labor lawyer, Mr. Fine, in June or July of 1983, while consulting about other matters. No legal action resulted from that conference. Dubea and Petruso both testified that, until they received a bill for $5,946.89 from the Industrial Commission in early September 1983, they took no legal action, although they had received the May 24th award and understood that it would become final if not protested within 90 days. Petruso said the receipt of the September bill was Cajun Cable's first indication that the employee's claim would involve more than a few hundred dollars. Receipt of the bill prompted Dubea to seek legal help in early September. Dubea again called attorney Fine, who referred him to attorney Stoffa, a partner specializing in workers' compensation. The parties stipulated that, until Dubea talked with his attorney in September 1983, neither Dubea nor Petruso was aware that Cajun Cable had legal rights against the carrier on the basis of the agent's oral promise to procure coverage effective March 1st. After Dubea met with his attorney, Petruso called the carrier "to finally see if I could find out why the date was different than what I had anticipated." Petruso spoke with Gerald Clifford, the carrier's senior underwriter, who told her the policy was effective from the

application date entered by the agent. Petruso testified she learned for the first time during her call to Clifford on September 8, 1983, that Patterson had changed the application date from March 1st to March 8th.

The employer filed its untimely request for hearing on September 8, 1983, 107 days after the May 24th award. Cajun Cable claimed that its late filing should be excused under A.R.S. § 23–947(B)(1) because it had justifiably relied on the carrier's agent Patterson's representations that coverage did not begin until after the date of the injury.

After receiving a copy of the employer's request for hearing, the No Insurance Fund also filed a request for hearing, but it did not do so until December 28, 1983, 218 days after the May 24th award, and 111 days from the employer's request. The Fund alleged that the claim should be processed against Fremont as the carrier, not as a no-insurance matter. On January 27, 1984, the carrier issued a Notice of Claim Status, denying benefits. Both the employer and the Fund filed timely requests for hearing from this denial of the claim.[2] On March 30, 1984, the Commission ordered the No Insurance section to commence payment of medical benefits and compensation until further order pursuant to A.R.S. § 23–1061(K).

After a consolidated hearing on the timeliness of the employer's and Fund's requests for hearing, the administrative law judge refused to excuse the late filings. As to the employer he found:

13. That from the receipt of the FINDINGS AND AWARD FOR COMPENSABLE CLAIM the defendant employer did not agree with the Award. The defendant employer maintained all along that it should have workmen's compensation coverage with Fremont as per the representations made by Mr. Patterson. Nevertheless, the defendant employer

did not protest the FINDINGS AND AWARD FOR COMPENSABLE CLAIM within the 90 day protest period.

14. Considering the evidence in its entirety, the defendant employer has not established, by a reasonable preponderance, that his late REQUEST FOR HEARING should be excused and the Industrial Commission of Arizona is without jurisdiction to hear defendant employer's claim regarding insurance coverage on its merits.

As to the Fund, the administrative law judge concluded:

15. Likewise, the No Insurance Section of the Industrial Commission of Arizona has not established, by a reasonable preponderance, that its late REQUEST FOR HEARING should be excused and the Industrial Commission of Arizona is without jurisdiction to hear the No Insurance Section's claim regarding insurance coverage on its merits.

The award was affirmed on review. The employer and the Fund timely petitioned for special action review.

### Should the Untimely Filings Have Been Excused?

Petitioners begin their consolidated argument with a lengthy discourse on the law of insurance contracts in an effort to establish that the agent's oral promise to obtain workers' compensation coverage for the employer by March 1, 1983, was an oral binder creating coverage by the carrier. We need not determine the existence of insurance coverage in this appeal, because the administrative law judge never reached that issue. Rather, for the purpose of addressing the issues considered by the administrative law judge, we assume the existence of a binder creating coverage as of March 1, 1983.

The administrative law judge refused to excuse the late filing of petitioner's re-

2. That these requests for hearing were timely with respect to the January 27, 1984, award is not determinative. Unless the late requests for hearing directed to the May 24, 1983, award were effective despite their lateness, the May 24th award had become final long before the January 27th award was issued, and the May

24th determination of no coverage was res judicata. Thus, the sole issue on appeal is whether the lateness of the protests of the Commission's May 24, 1983, award should be excused. If not, the timely protests of the carrier's January 27, 1984, award did no good.

quests for hearings pursuant to A.R.S. § 23–947, which provides in pertinent part:

A. A hearing on any question relating to a claim shall not be granted unless ... such request for a hearing is filed ... within ninety days of notice of a determination by the commission, insurance carrier or self-insuring employer under § 23–1047 or § 23–1061....

B. ... Failure to file with the commission within the required ninety days by a party means that the determination by the commission, insurance carrier or self-insuring employer is final and res judicata to all parties. The industrial commission or any court shall not excuse a late filing unless any of the following apply:

1. The person to whom the notice is sent does not request a hearing because of justifiable reliance on a representation by the commission, employer or carrier.

## A. *Reliance by Employer*

The employer challenges the administrative law judge's failure to find that it justifiably relied on a misrepresentation of the carrier. The employer argues that, although Mike Dubea and Linda Petruso thought all along that Cajun Cable *should* have insurance, they relied on Patterson's representations that it had none, and they had no basis to dispute that representation until September 1983, when Dubea contacted his attorney and learned that the employer may have achieved applicable insurance through the agent's oral binder. In light of the binder, the employer argues, Patterson's representation that there was no insurance was legally false, and the employer's reliance on that representation was justifiable within the meaning of A.R.S. § 23–947(B)(1).

The employer attempts to support this argument by reference to the holding of the Arizona Supreme Court in *Holler v. Industrial Comm'n*, 140 Ariz. 142, 680 P.2d 1203 (1984). In *Holler* the claimant initially accepted without protest the employer's and the Commission's miscalculation of his average monthly wage. The claimant testified that the calculation "didn't look right" but that he nevertheless relied on its accuracy. He was not aware of the error until, after the time to request a hearing had passed, he first saw his attorney, who calculated the correct wage. The administrative law judge refused to excuse late filing. The supreme court reversed, holding that the petitioner had justifiably relied on the miscalculation. *Holler*, 140 Ariz. at 145, 680 P.2d at 1206. The court reasoned that an employee is not automatically expected to "mistrust his employer and suspect his employer had given incomplete or false figures to the carrier." *Id.* The court also took into consideration "the relative knowledge and sophistication of petitioner and carrier, and claimant's ignorance of the Workmen's Compensation Act and of business practices generally." *Id.* Additionally, the court found that the claimant could rely on the calculation of the Commission, which is "not in an adversarial relationship with claimants." *Id.* The supreme court concluded that the late filing under these circumstances was excusable.

There are telling differences from *Holler* in this case. In *Holler*, the employee didn't contact a lawyer until after the protest period had passed; here, the employer contacted its labor attorney specifically about worker's compensation coverage problems in June or July of 1983, well before the expiration of the 90–day period. Assuming that the employer justifiably relied on Patterson's representation of no coverage until this June or July meeting with counsel, it is difficult to find such reliance justifiably operative thereafter.

Moreover, from the June or July legal consultation, when no action was taken, to the September legal consultation, after which the employer requested a hearing, one circumstance changed. In July 1983 the employer did not appreciate the extent of its financial liability. Linda Petruso testified that, until Cajun Cable received the September 2, 1983, billing from the Industrial Commission, she was not aware that the claim would involve "more than a few hundred dollars." This testimony is evidence from which the administrative law judge could have inferred that the employer, having sought legal counsel during the period when it could have filed a timely

request for hearing, withheld timely protest not because of its reliance on the carrier's assertions of no coverage but because of its expectation of minimum liability. This evidence supports a finding of no reliance.

■ We interpret the evidence on review in a light most favorable to supporting the administrative law judge's decision. *Vandever v. Industrial Comm'n*, 148 Ariz. 373, 378, 714 P.2d 866, 871 (App.1985). Because the administrative law judge's refusal to excuse the employer's late request is supported by evidence that the employer did not justifiably rely on a representation by the carrier, we find no abuse of discretion in the administrative law judge's refusal to excuse the employer's untimely request for hearing.

### B. *Reliance by the No Insurance Fund*

The Fund likewise challenges the administrative law judge's refusal to excuse late filing. We assume without deciding that the Fund had hearing rights separate and distinct from the employer, had it timely asserted them. Thus we limit our review to the question of timely assertion.

The Fund first argues that it was not precluded from protesting the Commission's award despite the passage of the ninety day protest period of A.R.S. § 23–947 because, as an arm of the Industrial Commission, a state agency, it was exempt from estoppel by statutes of limitations.

■ Statutes of limitations do not apply against the state when it acts in its character of a sovereign, in the absence of a statute specifically allowing such a defense. *Kerby v. State of Arizona*, 62 Ariz. 294, 308, 157 P.2d 698, 704 (1945). Here, however, whether or not the No Insurance Fund was acting in the state's character of a sovereign, it was statutorily subject to the time requirements of § 23–947. A.R.S. § 23–947(B) states that failure "by a party" to challenge a determination within the required ninety days means that the unchallenged determination is final. A.R.S. § 23–941(A) provides that "subject to A.R.S. § 23–947, any interested party may file a

request for hearing concerning a claim." In A.R.S. § 23–901(9), the phrase "interested parties" is defined to include "the commission." We have previously stated,

> Statutes must also be given a sensible construction to avoid an absurd result. [citation omitted] Excluding interested parties other than employees from the 90–day time limit for filing a request for a hearing would lead to such a result. An employee would have a 90–day protest period but other parties would have no prescribed time limit for protesting a determination. We find no logical reason to treat employees and interested parties other than employees differently.

*Wilson v. Industrial Comm'n*, 147 Ariz. 261, 265, 709 P.2d 895, 899 (App.1985).

■ We hold that the Fund was an interested party in this case within the meaning of A.R.S. §§ 23–901(9) and –941(A). We have written in the past of the distinction between the Industrial Commission's familiar role as neutral arbiter and its less frequent role as advocate. *Evertsen v. Industrial Comm'n*, 117 Ariz. 378, 573 P.2d 69 (App.1977) *adopted and approved*, 117 Ariz. 342, 572 P.2d 804 (1977). *Evertsen* established the standing of the Industrial Commission to appear before the court of appeals when it has a legitimate interest to assert or to defend. A.R.S. § 23–901(9). likewise recognizes that agencies of the Commission may play an advocate's role before the Commission itself. *State Compensation Fund v. Mar Pac Helicopter Corp.*, 156 Ariz. 348, 350, n. 1, 752 P.2d 1, 3, n. 1 (App.1987), recognizes the standing of the Commission as an advocate when, as here, it seeks to avoid liability for the No Insurance Fund under A.R.S. § 23–907(B). The Fund here clearly played an advocate's role.

Because we hold that the Fund was an interested party, we also hold that it was bound by the time limits of A.R.S. § 23–947, unless it had a statutory excuse for late filing.

■ The Fund next argues that, even if it was subject to the time requirements of § 23–947, it gave a statutorily sanctioned

excuse for late filing because it justifiably relied on the representations of the carrier and the employer that there was no insurance coverage in effect on the date of the injury. A.R.S. § 23–947(B)(1).

Prior to issuing its award of compensability on May 24, 1983, the Fund employed its normal procedures to check for insurance coverage. Its computer showed no coverage before March 8th, a date supplied by the insurer, and the employer confirmed by telephone that there was no coverage before that date. The Fund had no initial reason to question this information. Until the employer filed its request for hearing, the Fund reasonably relied on the carrier's representation that there was no insurance.

This justifiable reliance ended, however, when the employer filed a request for hearing on September 8, 1983. That request put the Commission on notice that insurance coverage was disputed. The Fund has offered no evidence that, beyond that date, it justifiably relied on Fremont's representation of no coverage. Yet the record indicates that the Fund did not file its request for hearing until December 28, 1983, 111 days beyond the date the employer filed its untimely protest, and 218 days from the issuance of the May 24, 1983, award.

A party justifiably lulled into forgoing filing of a claim beyond the expiration of a period of limitations must file his claim "within a reasonable time after the circumstances inducing delay have ceased to be operational." *McKaskle v. Industrial Comm'n*, 135 Ariz. 168, 174, 659 P.2d 1313, 1319 (1983); quoting Annot., *Plaintiff's Diligence as Affecting his Right to Have Defendant Estopped from Pleading the Statute of Limitations*, 44 A.L.R.3d 760 (1972). We apply this same principle to the filing of a request for hearing under A.R.S. § 23–947.

Whether a party awakening from circumstances of estoppel has thereafter taken requisite action with due diligence is ordinarily a question of fact. *McKaskle*, 135 Ariz. at 174, 659 P.2d at 1319. However, as stated by the New York Court of Appeals,

in no event will [a party] be found to have exercised the required diligence if his action is deferred beyond the date which would be marked by the reapplication of the statutory period, i.e., ... the length of the statutory period itself sets an outside limit on what will be regarded as due diligence.

*Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y. S.2d 259, 263, 377 N.E.2d 713, 717 (1978). *See also Regus v. Schartkoff*, 156 Cal.App. 2d 382, 386–7, 319 P.2d 721, 724–5 (1957).

In this case the Fund had a maximum of ninety days from September 8, 1983, within which to file a request for hearing. It waited 111 days to do so. By then its time for independent filing had passed.

 The Fund has urged, however, that, once the employer filed a request for hearing on September 8, 1983, the Fund had no need to file an independent request for hearing; the hearing occasioned by Cajun Cable's request would have entitled the Fund to present its position without filing a separate request of its own. This argument is correct only to a point. When an interested party files a timely or excusably untimely request for hearing, all issues pertaining to the challenged award are open for consideration at the hearing; the right to challenge the award is not limited to the party filing the request. *Terrell v. Industrial Comm'n*, 19 Ariz.App. 468, 508 P.2d 355 (1973); *Arizona Public Service v. Industrial Comm'n*, 133 Ariz. 358, 651 P.2d 886 (App.1982). Thus, if Cajun Cable's September 8th request had been timely or excusably untimely, the Fund could have presented its position at hearing without filing an independent request.

The risk in this coat-tailing procedure, however, is that the interested party that neglects to file an independent request for hearing must stand or fall with the hearing rights arising from the request that another party has filed. In this case we have affirmed the Industrial Commission finding that Cajun Cable's request was inexcusably untimely under A.R.S. § 23–947. Where *no* interested party files a timely challenge to an award, the unchallenged award be-

comes final and takes res judicata effect as to *all* parties. A.R.S. § 23–947(B).

Accordingly, the employer's untimely request on September 8, 1983, accorded the Fund no hearing rights. Nor did the Fund's untimely independent request on December 28, 1983. We therefore find no abuse of discretion in the administrative law judges's ruling with respect to the Fund.

The award of the Industrial Commission is affirmed.

BROOKS, P.J., and HAIRE, J., concur.