787 P.2d 1107

**Michael L. ALLEN, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Chemical Fireproofing,
Respondent Employer,**

**No Insurance Section, Respondent Carrier–Respondent Party in Interest.**

**No. 1 CA–IC 89–053.**

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 27, 1990.

Earl Terman and Steven Sharp, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by David W. Earl, Phoenix, for respondent Employer.

Laura L. McGrory, The Industrial Com'n of Arizona, Phoenix, for respondent No Ins. Section.

## OPINION

KLEINSCHMIDT, Judge.

This is a special action review of an Industrial Commission award dismissing the petitioner employee's (claimant's) hearing request. Two issues are presented: (1) whether the administrative law judge erred by finding that the March 14, 1986, worker's report of injury signed and filed by the claimant's wife did not constitute a claim for workers' compensation benefits, and (2) whether the administrative law judge erred by finding that the claimant's subsequent claims for benefits were untimely without excuse.

Because we find that the claimant's attorney's letter of June 4, 1987, was a legally cognizable claim for workers' compensation benefits, we set aside the award.

On January 18, 1986, the claimant sustained a back injury while employed by the uninsured respondent employer, Chemical Fireproofing (Chemical). On March 14, 1986, the claimant's wife signed and filed a worker's report of injury with supporting medical records, which was not processed by the Industrial Commission.

On May 5, 1986, the claimant and his wife entered into a written agreement with Chemical, which provided that Chemical would pay 20% of the claimant's hospital bills not covered by his personal insurance, although Chemical also paid many of claimant's medical bills, and would pay for the installation of a spa in exchange for the claimant agreeing not to institute any action arising out of his industrial injury. The phrase "with guarantee of job" was added to the agreement to reflect the continuing availability of the claimant's job when he was able to return to work. In addition to the benefits provided in this agreement, the employer paid the claimant's full salary from January 19, 1986, through September 5, 1986. During this time, the claimant was off work until early June 1986, and only worked part-time during the remaining three months. After August 20, 1986, the employer paid no additional medical bills.

In May 1987, the claimant sought legal advice. On June 4, 1987, the claimant's attorney sent a letter to the Industrial Commission which provided information regarding the claimant's injury, his uninsured employer, the agreement he had entered into with the employer, and his unequivocal desire to file a workers' compensation claim for benefits. This letter also included an unsigned worker's report of injury completed by the attorney. The claimant's attorney contacted the Industrial Commission to follow up on this letter on July 7, 1987; August 25, 1987; September 22, 1987; October 28, 1987; and December 24, 1987. He was repeatedly told that the claim was being processed and a determination would be forthcoming.

Eight months later, on February 10, 1988, the Special Fund wrote to the claimant's attorney and enclosed a worker's report of injury for his client to complete and return. This report was completed and signed by the claimant and filed on February 12, 1988. On March 18, 1988, the Special Fund issued a notice of claim status denying the claimant's claim as untimely. The claimant timely requested a hearing and one hearing was held.

The claimant testified that at the time of his injury he was cleaning an overhead kitchen duct, slipped and fell, and struck his back. The claimant was taken to the emergency room and was hospitalized. While he was in the hospital, Chemical's

owners, the Olsens, came to see him. They told him not to worry about anything and that "it was all taken care of." The claimant stated that he had been employed by Chemical for over three years, and he was paid his full salary while he was unable to work. He testified that shortly after the injury he looked into filing a third-party claim against Intel, where he had been working at the time of his injury. The claimant stated that Mr. and Mrs. Olsen threatened to file bankruptcy and he feared he would get nothing from the Olsens if he filed a claim against Intel.

In April 1986, the Olsens presented the claimant with a written agreement to sign, in which the claimant agreed not to file any claims arising out of his industrial injury. Several weeks later, the claimant and his wife signed this agreement in front of a notary. The claimant testified that he always intended to recover whatever benefits he was entitled to under the law, and he assumed that the agreement would insure this. The claimant also testified that not all of the terms of his agreement with the Olsens were contained in the written document. One omitted term, a guaranteed job, was inserted in front of the notary with Mr. Olsen's approval.

The claimant testified that he was not aware that his wife had filed a workers' compensation claim in March 1986, but when he became aware of her filing, he approved of it. He stated that he completed and signed a worker's report of injury for his attorney on July 1, 1987, which was not filed until February 12, 1988. The claimant sought legal representation because he felt that the Olsens were not living up to the written agreement. The claimant's wife also testified and corroborated her husband's testimony.

Otto William Olsen, Jr. testified that Chemical performed industrial cleaning of kitchen exhaust systems and was the claimant's employer. At the time of the claimant's injury, he did not have workers' compensation insurance. Mr. Olsen agreed that he had visited the claimant in the hospital and had told him that everything was going to be all right, but he denied ever telling the claimant that he had no right to file a workers' compensation claim.

With regard to the May 1986 written agreement, Mr. Olsen testified that it was prepared by an attorney based on agreements that the Olsens had entered into with the claimant. Mr. Olsen stated that he made no additional promises outside of this written agreement, nor was he aware of any promises made by his wife or daughter. He testified that he voluntarily paid the claimant's salary as a matter of goodwill. He noted that the claimant returned to work for a couple of months after the agreement was signed, but was only able to work part-time and subsequently quit because he could not physically perform the work.

Shelly Lynn Palmer, Mr. Olsen's daughter, testified regarding bookkeeping she performed for Chemical. She only did minor book work for her parents' business and was not a salaried employee. She stated that she had paid all of the claimant's medical bills per the May 1986 written agreement. The last bill she paid was on August 20, 1986.

On December 28, 1988, the administrative law judge entered an award dismissing the claimant's application for benefits as untimely. The award was affirmed on administrative review, and the claimant brought this special action.

■ Because we find it more persuasive, we address the claimant's second argument first. The claimant argues that the time for filing his workers' compensation claim was tolled during the time that the parties were acting in conformity with the written settlement agreement and Chemical was paying the claimant's salary and medical expenses. The argument continues that once the claimant became aware that Chemical was no longer abiding by the agreement, he acted with due diligence in seeking legal advice and having his attorney send a notice of claim letter to the Industrial Commission which manifested the clear intent to claim workers' compensation benefits.

Arizona Revised Statutes section 23–1061(B) provides:

Failure of an employee or other party entitled to compensation to file a claim with the commission within one year ... shall not bar a claim if the insurance carrier or employer has commenced payment of compensation benefits under the provisions of §§ 23–1044 [partial disability benefits], 23–1045 [total disability benefits], or 23–1046 [death benefits].... In these cases, the employer/carrier will be equitably estopped from asserting the untimeliness of a subsequently filed claim for benefits, as long as the claimant acts within a reasonable time after the circumstances giving rise to the estoppel have ceased to operate. *McKaskle v. Industrial Comm'n*, 135 Ariz. 168, 659 P.2d 1313 (App.1982). This court recently discussed what constitutes action within a reasonable period of time.

[I]n no event will [a party] be found to have exercised the required diligence if his action is deferred beyond the date which would be marked by the reapplication of the statutory period, i.e., ... the length of the statutory period itself sets an outside limit on what will be regarded as due diligence.

*Cajun Cable Co. v. Industrial Comm'n*, 156 Ariz. 590, 596, 754 P.2d 317, 323 (App. 1987) (citing *Simcuski v. Saeli*, 44 N.Y.2d 442, 450–51, 406 N.Y.S.2d 259, 263, 377 N.E.2d 713, 717 (1978)).

In this case, Chemical paid the claimant his full salary from the time of his injury through September 5, 1986, covering periods of both temporary total disability and temporary partial disability. In addition, Chemical paid various medical bills for the claimant and provided funds for a spa to be installed at the claimant's home for physical therapy. We believe that these payments are sufficient to bring the employer within the ambit of A.R.S. section 23–1061(B). For that reason, the employer would be equitably estopped to raise the issue of untimeliness if the claimant acted with due diligence after the cessation of these payments in filing a claim for benefits. Since Chemical last paid benefits to

the claimant on September 5, 1986, the claimant had until September 6, 1987, under *Cajun Cable* to file his claim for benefits. Thus, the question becomes whether the June 4, 1987, letter from the claimant's attorney to the Industrial Commission was a legally cognizable claim.

■ The workers' compensation statutes do not contain any particular form or requirements for a claim for compensation, and this court has interpreted A.R.S. section 23–1061 merely to require an unequivocal written manifestation of an intent to claim benefits for an injury compensable under the workers' compensation act. *McNatt v. Industrial Comm'n*, 13 Ariz. App. 158, 474 P.2d 1010 (1970). In the context of a petition to reopen, the Arizona Supreme Court has also held that an attorney may sign and file a claim on behalf of his client. *See Fullen v. Industrial Comm'n*, 122 Ariz. 425, 595 P.2d 657 (1979).

In *Fullen*, the claimant's attorney sent a letter to the Industrial Commission stating that his client wished to reopen his case since additional surgery was anticipated. Prior to a response from the Industrial Commission, surgery was performed. Subsequently, it was not questioned that the claimant's claim for surgical and hospital benefits was meritorious, but reopening was denied because the claimant had failed to file and sign a petition to reopen on the commission's form. The supreme court held that the workers' compensation statutes do not require that a petition to reopen be submitted on commission forms or be signed by the claimant. The court held:

The requirement that a petition must be signed by the workman and not his attorney is not in harmony with the statute. The Commission may not, by rule, restrict a workman's right to be represented by an attorney.

*Id.* at 428, 595 P.2d at 660.[1]

In this case, the claimant indicated an unequivocal written manifestation of his

---

1. The Industrial Commission rules also provide that a claimant may be represented by an authorized representative, which is defined to include

an attorney, and that individual is authorized to sign reports or instruments on behalf of the claimant. *See* A.C.R.R. R4–13–105, –107.

intent to claim workers' compensation benefits when his attorney wrote to the Industrial Commission on June 4, 1987. Pursuant to *McNatt*, the claim was not required to be made on a commission form and a letter was sufficient. Further, the commission rules allow an attorney to act on behalf of a claimant and sign documents on his behalf. This rule is consistent with the supreme court's holding in *Fullen* which stated that the Industrial Commission cannot restrict a claimant's right to be represented by an attorney and that a petition to reopen in the form of a letter from the claimant's attorney was sufficient under the workers' compensation statutes. *Id.* We believe that the holding in *Fullen* should be equally applicable to claims for workers' compensation benefits, and that the June 4, 1987, letter from the claimant's attorney constituted a legally cognizable claim for benefits.

As additional support for this resolution, we note that when the Industrial Commission receives notification of an injury, it has a duty to send a claim form to the employee. *See* A.R.S. § 23–1061(C). In this case, the June 4, 1987, letter from the claimant's attorney clearly informed the commission of an injury, and if the commission had responded promptly with a claim form to the employee it would have in all likelihood been filed before the expiration of the one-year period on September 6, 1987.[2]

■ Finally, we note that under the Industrial Commission rules, the February 12, 1988, worker's report of injury may also be a timely claim for benefits. Administrative Code Rules and Regulations R4–13–107 provides:

> Filing of an incomplete form or an instrument other than a form when a form is required, within the prescribed time period, will constitute a timely filing if the party complies with these Rules by filing a properly completed and executed form within fourteen (14) days of the date

notice was given by the Commission that the form was incomplete.

In this case, the claimant's attorney filed the first page of a worker's report of injury with his June 4, 1987, letter. This constituted an incomplete form since it was missing the second page. Eight months later, when the commission informed the claimant that this form was inadequate, the claimant filed a properly completed and executed form two days later. Therefore, under Rule 107 it appears that the February filing was also timely.

For all of the foregoing reasons, it is unnecessary to reach the claimant's first issue. The award is set aside.

CLABORNE, P.J., and EHRLICH, J., concur.

---

2. This logic appears equally applicable to the March 1, 1986, worker's report of injury filed by the claimant's wife. This claim clearly informed the commission that an injury had occurred, but no processing took place and the commission did not send a claim form to the claimant.